[Civ. No. 25940. Fourth Dist., Div. Two. Dec. 7, 1982.]

CLEMENS A. HACKETHAL, Plaintiff and Appellant, v.
CALIFORNIA MEDICAL ASSOCIATION et al.,
Defendants and Appellants.

436

**COUNSEL**

Levy & Goldman and Lawrence Rosenzweig for Plaintiff and Appellant.

Wilson, Borror, Dunn & Van Hulle and Lucien A. Van Hulle for Defendants and Appellants.

Opinion

CHARAMZA, J.*—

INTRODUCTION

Clemens A. Hackethal, M.D., filed a petition for a peremptory writ of mandate in Superior Court in San Bernardino County. Named as respondents were the California Medical Association (CMA) and the San Bernardino County Medical Society (SBCMS). The objective of the petition was to obtain a peremptory writ ordering respondents to reinstate petitioner to membership in each respondent organization. A judgment granting the writ was entered and a writ was issued by the superior court. CMA and SBCMS appeal from the judgment and the order granting the writ. Petitioner appeals from the judgment since CMA and SBCMS are not foreclosed by the judgment from again processing the charges that resulted in petitioner's expulsion from CMA and SBCMS.

FACTS

Petitioner is a medical doctor licensed to practice in California. He became a member of the SBCMS in 1967. SBCMS is a component society of the CMA and is governed by a constitution and bylaws which incorporates the constitution and bylaws of the CMA with respect to matters of discipline and disciplinary procedures for members.

This dispute arose in May 1975 when the Credentials and Professional Review Committee of the SBCMS filed charges with the secretary of the society initiating disciplinary proceedings against petitioner. The charges were referred to the Judicial Council of the SBCMS.[1] The council held preliminary hearings in August and September 1975 to determine whether formal charges should be filed and a formal hearing held.

---

*Assigned by the Chairperson of the Judicial Council.

[1]The term "Judicial Council" as used in this opinion means the Judicial Council of the San Bernardino County Medical Society. That term is used in chapter IX of the bylaws of the SBCMS to designate the standing committee that processes disciplinary proceedings filed against a member. The term "Judicial Commission" as used in this opinion means the Judicial Commission of the California Medical Association. That term is used in chapter III, section 2 of the bylaws of the CMA to designate the committee of the CMA that processes an appeal by a member of a component medical association from the action of such association against the member. The documentation of the actions taken by the SBCMS and the CMA is not always consistent in the use of the terms "council" and "commission."

On September 30 formal charges were filed and petitioner was served with a copy of the formal charges and notice of the hearing on those charges.

The hearing was delayed from October 20, 1975, to December 8, 1975, because of a temporary restraining order which was later quashed permitting the hearing to take place. The hearing took place intermittently from December 8, 1975, to February 25, 1976, before the Judicial Council of the SBCMS. The Judicial Council that conducted the hearing was comprised of the same members that had conducted the preliminary hearings and determined that the formal charges should be filed.

Petitioner appeared at the hearing with counsel. Petitioner's counsel conducted some voir dire of individual members of the Judicial Council but the referee unduly limited the amount and manner of such examination. The bylaws of CMA provide for challenge by the accused of the impartiality of any member and for the record to reflect the referee granted the challenge. Petitioner, through counsel, challenged the panel in toto on a multitude of grounds. Each member of the panel, in response to questions by the referee, denied any preconceived notion of guilt. Each similarly declared their ability to judge the case fairly on the evidence presented at that hearing and that hearing alone.

Petitioner testified on direct examination at the hearing. He and his attorney voluntarily absented themselves on February 24, 1976, and did not return. He was not cross-examined. The hearings proceeded to a conclusion on February 25 in his absence.

During the hearings, private executive sessions of the Judicial Council were held. Included were the referee, a representative of the public service committee and legal counsel for that committee. Petitioner and his counsel were not present. They were aware of the meetings and acquiesced to them.

Prior to the hearing, each member of the Judicial Council was given a "blue pack" of material prepared by staff. That material contained statements alleging misconduct by petitioner on cases on which petitioner was not charged. That "blue pack" was later admitted into evidence. Not all allegations included in that material were substantiated by evidence at the hearing.

The charges to the Judicial Council stated they may not consider evidence of prior conduct on the guilt phase but if guilt were found it may be considered in fixing penalty.

The charges also advised that the burden of proof was by a preponderance of the evidence. That was contrary to the bylaws which required clear and convincing proof of the charges.

On March 26, 1976, the Judicial Council, by written decision, found against petitioner on several charges. Included were improper diagnosis and treatment, false statements and deficiencies in professional competence. The panel found in favor of petitioner on several charges. The council directed that Dr. Hackethal be expelled from the SBCMS. The decision of the Judicial Council of SBCMS was appealed to CMA. The Judicial Commission of the CMA received written briefs and the transcript of the proceedings below. It heard oral argument.

The written decision of the Judicial Commission of the CMA was issued on June 15, 1977. It stated that the CMA panel had conducted a full and independent review of the entire record. It considered all procedural and substantive objections asserted. It exercised its independent judgment as to each charge on which the SBCMS had found against petitioner.

The CMA panel upheld several of the substantive charges of improper diagnosis and treatment and deficient professional competence. It concluded that the allegations of procedural error were not meritorious. The panel did acknowledge the error below in the charge to the SBCMS panel on burden of proof. It applied the clear and convincing proof standard.

The CMA decision ordered expulsion. It stayed the order of expulsion on certain specified terms. Included in the terms were suspension for one year and compliance with terms and conditions to be imposed by the SBCMS for the purpose of education, rehabilitation and improved medical practice.

On September 14, 1978, the SBCMS held a hearing to determine whether petitioner had complied with the terms of probation. It determined that petitioner had not complied and expelled him.

This action had been filed on or about September 1977. It came to the hearing in March 1980, judgment was entered in April 1981. This appeal followed.

On March 11, 1976 (after the hearing had been completed and before the Judicial Council of SBCMS had announced its decision) the Board of Medical Quality Assurance (BMQA) filed an accusation against Dr. Hackethal, the petitioner in this litigation. The BMQA, following the recommendation of the administrative law judge, disciplined Dr. Hackethal. His license was ordered suspended for six months, the suspension was stayed and he was placed on probation for two years. The order was based upon one incident of overprescribing (patient, Loretta B.), one incident of ordering excessive laboratory procedures (patient, Mr. H.) and one incident of overbilling Medicare (patient, Lulu T.). The decision of the BMQA was challenged in a petition for a peremptory writ of administrative mandamus. The petition was denied and the judgment ap-

pealed to the Fourth District, Court of Appeal, this division. In an unpublished opinion this court ordered the trial court to set aside its decision as to the incident relating to Loretta B. and Mr. H. The statute under which the BMQA filed its charges as to those incidents (Bus. & Prof. Code, § 2361.5) was repealed before BMQA had rendered its decision. The accused could not be disciplined on a repealed section. In addition the court decided the findings by BMQA did not support discipline under section 2361.5 or Business and Professions Code section 700, the section enacted to replace section 2361.5.

This court found the decision based upon the incident in which Lulu T. was named was supported and that discipline was appropriate. The trial court was ordered to issue a writ requiring BMQA to redetermine the disciplinary measures appropriate to the overbilling, false statement count of the accusation.

## ISSUES

It comes as no great surprise that the parties state the issues quite differently. Respondents in the trial court, appellants and cross-respondents here, list five and begin each with the words "Did the trial court err . . . ." Petitioner in the trial court, respondent and cross-appellant here, lists two and begins each with the words "Does substantial evidence support the trial court's finding." Respondent, as cross-appellant, lists another issue asserting error in that the decision of the trial court permits further administrative hearings.

The gut issue is the procedural sufficiency of the disciplinary hearing conducted by the Judicial Council of the SBCMS. Secondary to that is whether the hearing afforded petitioner by the Judicial Commission of the CMA cured any defects in the prior hearing. If the trial court's order for reinstatement is sustained, petitioner asserts in his cross-appeal that further hearings on the charges should not be allowed.

## PROCEDURAL SUFFICIENCY

### A. *Fair Procedure.*

█ Fair procedure is a developing concept in California. It is applicable when an organization makes a decision to exclude or expel an individual. It is a common law principle under which a private organization is legally required to refrain from arbitrary action. The action to exclude or expel must be substantively rational and procedurally fair. It applies to organizations consisting of licensed professional persons. (*Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541 [116 Cal.Rptr. 245, 526 P.2d 253]; *Applebaum* v. *Board of Directors* (1980) 104 Cal.App.3d 648 [163 Cal.Rptr. 831].)

The concept is not new. In 1923 in *Taboada* v. *Sociedad Espanola etc.* (1923) 191 Cal. 187 [215 P. 673, 27 A.L.R. 1508], the California Supreme Court declared the expulsion of members of a fraternal organization to have been invalid. The members had been expelled at a meeting at which the rules, which required written notice of charges, an opportunity to prepare a defense and a hearing with a two-thirds vote necessary to impose a penalty of expulsion, had been suspended and the members expelled by a voice vote. The court observed that the right to a fair and impartial trial is not a mere pretense or shadow, but a real substantial enforceable right. In acting upon the expulsion of a member the organization is a quasi-judicial body and its hearing is a quasi-judicial hearing.

### B. *Elements of Fair Procedure*

Fair procedure does not compel proceedings with the formalities of a court trial. The minimum requirements are described in varying ways and may depend upon the action contemplated by the organization and the effect of that action on the individual. If the requirements that have been announced by the cases and literature were compiled the list would closely resemble a list of the requirements of procedural due process.

■ Adequate notice of charges and a reasonable opportunity to respond are basic to both due process and fair procedure. (*Applebaum* v. *Board of Directors, supra,* 104 Cal.App.3d at p. 657.) The individual has a right to a tribunal which meets the prevailing standards of impartiality. Biased decisionmakers are impermissible and the probability of unfairness is to be avoided. (*Id.*)

There must be an opportunity to confront and cross-examine the accusers and to examine and refute the evidence. (*Cason* v. *Glass Bottle Blowers Assn.* (1951) 37 Cal.2d 134, 144 [231 P.2d 6, 21 A.L.R.2d 1387].)

The individual must have an opportunity to present a defense. (*Pinsker* v. *Pacific Coast Society of Orthodontists, supra,* 12 Cal.3d at p. 555.)

### C. *The Disciplinary Hearing*

There is no contention that the notice of the charges and setting of the hearing was not correctly performed by SBCMS.

■ The makeup of the Judicial Council which conducted the hearing and ordered the expulsion is challenged by the petitioner. The basis of the challenge is twofold. Petitioner's voir dire was unduly limited and no challenges were granted.

A person whose rights are being determined has a right to an impartial panel to determine those rights. (*Applebaum, supra,* 104 Cal.App.3d at p. 657.) The objective is to have a panel composed of members that do not harbor a state of mind that would preclude a fair hearing. Disqualification should occur if there is actual bias. Disqualification may also be necessary if a situation exists under which human experience teaches that the probability of actual bias is too high to be constitutionally tolerable.

Categories have been identified where the probability of actual bias by a panel member is too high. Those categories include: (1) a member has a direct pecuniary interest in the outcome; (2) a member has been the target of personal abuse or criticism from the person before him; (3) a member is enmeshed in other matters involving the person whose rights he is determining; (4) a member may have prejudged the case because of a prior participation as an accuser, investigator, fact finder or initial decisionmaker. (See *Applebaum, supra; Crampton* v. *Michigan Dept. of State* (1975) 395 Mich. 347 [235 N.W.2d 352]; Prygoski, *Due Process and Designated Members of Administrative Tribunals* (1981) 33 Administrative Law Review 441, 455.)

The trial court found an undue restriction on voir dire. Such restriction necessarily had the effect of reducing petitioner's opportunity to expose facts that would require disqualification of individuals on the panel. Voir dire is the traditional and accepted method of selecting an impartial tribunal. The bylaws (ch. III, section 1, para. (6)(c)) gave the accused the right to challenge council members. To meaningfully exercise that right petitioner should have been afforded a reasonable opportunity to establish the grounds for challenge. He was not afforded that opportunity.

Petitioner asserts that the Chairman of the Judicial Council, Dr. Gillespie, was a business competitor of petitioner in that he was a partner in a medical laboratory that was in competition with a medical laboratory operated by petitioner. There is no trial court finding to support the assertion. It is not suggested that the assertion was made at the Judicial Council hearing. The assertion does no more than lend some support to petitioner's contention that voir dire should not have been unduly restricted. A few questions directed at Dr. Gillespie at the initial stages of the hearing would have afforded an opportunity to establish whether the assertion is correct. If it were established that the Chairman of the Judicial Council was a business competitor of the accused, petitioner's challenge may have succeeded.

The bylaws of the CMA and SBCMS provide for the Judicial Council to hear both the preliminary hearing to determine if charges should be filed, and the trial of the charges. That council was a standing committee and therefore consisted of the same individuals at both the preliminary hearing and trial stages.

With that condition existing the necessity of reasonable voir dire becomes more apparent. If one or more members of the Judicial Council had resolved the issue of petitioner's guilt at the preliminary stages of the proceeding such member or members should not have participated in the trial.

We do not suggest that a tribunal may never make an initial inquiry on the propriety of bringing charges and thereafter conduct the formal hearing. However, should that procedure be followed, a closer scrutiny of the makeup of the panel is essential. Fairness requires a practical method of testing impartiality. No such method was provided in the hearing before the Judicial Council of the SBCMS.

Private executive sessions of the Judicial Council during the course of the hearings at which the referee and the counsel for the SBCMS were included and at which the petitioner and his counsel were excluded present an unusual circumstance. That conduct of the Judicial Council would clearly suggest a lack of fair procedure. Any accusations made in a closed session would preclude confrontation. No cross-examination would be possible. Petitioner would not know the identity of the accuser nor the evidence presented. There would be no opportunity to refute. Failure to object to those sessions should not be taken as a binding waiver. The person whose rights are being determined should not be placed in a position of being required to object and thereby spur hostility or not object and thereby suffer waiver. Wrongdoing in those sessions is not presumed. However, no justification for them is suggested. The fact of their occurring suggests an unfair procedure.

There is some discussion in petitioner's and respondents' brief of alleged failure of SBCMS to allow discovery. The trial court found that timely discovery was not afforded to Dr. Hackethal. No authority is cited and none has been found that establishes the right to formal discovery in an administrative proceeding aimed at disciplining a member of a private association. Refusal of discovery is not an accurate title for petitioner's complaint. The contention seems to be that he was denied a copy of some of the documentary evidence made available to the members of the Judicial Council or that formed the basis of the charges. Such a denial would make it difficult to respond to the charges and present evidence to refute the evidence presented against him. Fair procedure would require disclosure of evidence forming the basis of the charges. It would also require that any evidence made available to the members of the panel also be made available to the petitioner. (See *Cason* v. *Glass Bottle Blowers Assn.*, *supra*, 37 Cal.2d at p. 145.)

There is agreement that the Judicial Council was incorrectly charged on the burden of proof standard established in the bylaws. The standard established is "clear and convincing" proof of the charges. The Judicial Council did not

follow the applicable provision but considered the charges on a standard of "preponderance of the evidence." That was a violation of its own bylaws.

The trial court did not decide if the action to expel was substantively correct. That need not be decided here. The trial court decision was based upon an evaluation of the procedure followed. The trial court was correct in its determination that the procedure was not fair and did not meet the common law standards of fair procedure.

D. *Appeal Process as Cure*

■ Defendants, SBCMS and CMA contend that the appeal to and the decision by the CMA cured any defects in the SBCMS Judicial Council proceeding and its decision to expel. In support of that contention many cases are cited in which some aspects of administrative process and review of administrative decisions within an agency appellate structure are examined. The cases uphold the determination of rights and the settlement of disputes by administrative process. Appellate review within an agency appellate structure is recognized and approved. The power of an agency to review lower administrative decisions and to affirm, modify or reverse the decision made at a lower level is supported. The power of an appellate tribunal to reexamine and revise or reverse its own decision is recognized. The necessity of exhaustion of the administrative remedy as a prerequisite to court action is recited in many of the cases cited.

The precise issue we face in this case has not been examined in the cases cited by either side or in any case found. The proceeding before the SBCMS Judicial Council did not meet the standards of common law fair procedure. The record of the administrative proceeding was established in that hearing, in an atmosphere of substantial deficiencies. The Judicial Commission of the CMA made an independent review of the entire record so compiled. Its decision to expel was based thereon. Is that decision sustainable? The trial court held that it is not.

In one case cited by petitioner, *Ward* v. *Village of Monroeville* (1972) 409 U.S. 57 [34 L.Ed. 267, 93 S.Ct. 80], the Supreme Court faced an issue with some similarity in a constitutional due process case. Ward, the petitioner, was tried on a traffic offense which he contested before the mayor of the village who was determined by the United States Supreme Court not to be an impartial judicial officer. The conviction had been upheld by the highest court of the state. An effort was made to sustain the conviction on the ground that the state statute provided for a trial de novo in another court. The United States Supreme Court rejected that argument. The rationale was that the procedural safeguard does not guarantee a fair trial in the mayor's court and nothing suggests that the

incentive to convict would be diminished by such a safeguard. The procedure was not constitutionally acceptable even though the state eventually offers an impartial adjudication. The court stated, "Petitioner is entitled to a neutral and detached judge in the first instance." (409 U.S. at pp. 61-62 [34 L.Ed.2d at p. 272].)

In a case where a member of a union was expelled at the local level and the expulsion was upheld on appeal, the court held that the affirmance of the expulsion did not validate the initial order. The initial order imposed a penalty not authorized for the offense charged. The appeal process was necessary to gain access to the court but gave no vitality to the invalid order. (*Dingwall* v. *Amalgamated Assn. etc.* (1906) 4 Cal.App. 565 [88 P. 897].)

It appears to this court that the independent review by the Judicial Commission of the CMA of the record which was established in a proceeding before the Judicial Council of the SBCMS that did not meet the common law standards of fair procedure did not have a curative effect sufficient to sustain petitioner's expulsion.

### E. *Propriety of Further Hearings*

The writ in the lower court required the respondents to set aside the decision of expulsion "pending a proper administrative hearing." Petitioner asserts that this court should require the writ to be modified to preclude further administrative hearings on the same charges.

In support of that position, petitioner cites a number of federal cases that have approved access to the court without exhaustion of administrative remedies. One federal case is cited where a court enjoined further disciplinary action against a union member. (*Kuebler* v. *Cleveland Lithographers & Photo U. Loc. 24-P* (6th Cir. 1973) 473 F.2d 359.)

No California case is cited and none has been found that calls for that result under the facts of this case. On the contrary, private organizations retain discretion to decide who should be included or excluded from membership. (*Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541[116 Cal.Rptr. 245, 526 P.2d 253]; see also *Applebaum* v. *Board of Directors, supra; Cason* v. *Glass Bottle Blowers Association, supra,* 37 Cal.2d 134.)

Petitioner's contention that the proceedings before the Board of Medical Quality Assurance preclude further disciplinary proceedings by SBCMS and CMA is without merit. SBCMS and CMA were not parties to that proceeding and were not in privity with a party to that proceeding. The fact that

members of the Judicial Commission testified at the BMQA hearings does not establish that SBCMS was a party or in privity with a party.

Since the parties in this litigation, SBCMS and CMA against whom the BMQA decision is asserted, were not a party or in privity with a party in the BMQA litigation, that ends the matter. SBCMS and CMA are not bound by the final determination of the BMQA proceeding. (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892]; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgments § 239, p. 3372.)

Petitioner strongly asserts that his position is correct. He asserts that BMQA acts in a representative capacity to protect health care and has authority to bind all members of the class represented. Petitioner fails to point out how SBCMS and CMA are members of a "class" represented by BMQA in its disciplinary proceeding.

In support of the proposition that members of a class may be estopped petitioner cites *Rynsburger* v. *Dairymen's Fertilizer Coop., Inc.* (1968) 266 Cal. App.2d 269 [72 Cal.Rptr.102]. In that action certain cities had sought to enjoin a fertilizer operation on the basis that it was a public nuisance. The trial court in San Bernardino County found the operation did not constitute a public nuisance. That judgment became final.[2]

Thereafter, the plaintiffs sought to reactivate an Orange County action to seek an injunction on the basis the operation was a private nuisance. The parties were enjoined from proceeding by the superior court in San Bernardino County. That order was upheld on appeal. The court held that the citizens and residents to the extent they are in privity with or represented by a city or state in an action, where there is specific statutory authority to sue are bound by a judgment against the governmental body. That decision does not support petitioner's position that SBCMS and CMA are estopped from holding further hearings on the original charges.

Petitioner also cites *Lynch* v. *Glass* (1975) 44 Cal.App.3d 943 [119 Cal.Rptr. 139], in support of his position. In *Lynch* the court reversed a trial court determination that the plaintiffs were collaterally estopped to assert that a certain road was subject to a public easement. In a previous action, that had become final, it had been determined that the road was not subject to a public easement. The parties against whom that decision was made were landowners that had an interest in the road being available to them and others. Plaintiffs were also

---

[2]Some of the plaintiffs through their attorneys had actually urged the city of which they were residents to pursue the public nuisance action.

landowners and had the same interest. One of the plaintiffs appeared as a witness in the prior action. The plaintiffs were not parties in the prior action and had no power to control the action.

The court refused to apply the rule against plaintiffs. The court reasoned that the plaintiffs should not reasonably have expected to be bound by the prior litigation. They did not have a relationship with the plaintiff corporations in the prior action that would put them on notice that they avoided the prior proceedings at their peril. That reasoning points to the folly of petitioner's plea here. The decision petitioner seeks would require every local professional association to become a party to each disciplinary proceeding by a state agency in which one of its members was respondent or be precluded from evaluating the member's status under its own rules.

Petitioner does not cite authority that supports the application of the doctrine of res judicata or collateral estoppel against respondents SBCMS and CMA.

The trial court ordered the petitioner reinstated pending a proper administrative hearing. That was done on the basis that he was denied procedural due process (common law fair procedure). The trial court did not make an independent judgment on the evidence. It found that the SBCMS prejudicially abused its discretion by proceeding other than in a manner provided by law. According to Code of Civil Procedure section 1094.5, subdivision (b) a proper inquiry in the trial court is whether there was any "prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law. . . ." It is proper for the trial court to examine the record to determine whether errors of law have been committed. (*Coldwell Banker & Co.* v. *Department of Insurance* (1980) 102 Cal.App.3d 381, 407 [162 Cal.Rptr. 487]; *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242].)

The decision of the trial court that there was an abuse of discretion because the respondents had not proceeded in the manner required by law becomes the issue before the appellate court. If that issue of law was correctly decided by the trial court the judgment must be affirmed. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907 [80 Cal.Rptr. 89, 458 P.2d 33]; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67 [64 Cal.Rptr. 785, 435 P.2d 553].)

The trial court's decision that there was a denial of common law fair procedure (stated by the trial court as a denial of procedural due process) is supported by the evidence before the trial court. That evidence consisted of the entire administrative record. The trial court's decision that the petitioner must be

reinstated pending a proper administrative hearing before the SBCMS is the correct one. The judgment is affirmed.

Morris, P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied December 27, 1982.