[No. B009330. Second Dist., Div. Four. May 21, 1986.]

BLINDER, ROBINSON & CO., INC., Plaintiff and Appellant, v. FRANKLIN TOM, as Corporations Commissioner, etc., et al., Defendants and Respondents.

**COUNSEL**

Hahn, Cazier & Smaltz, Donald C. Smaltz, Robert L. Hess, Thomas H. Mabie, Alan C. Jacobson, Arthur F. Mathews and Wilmer, Cutler & Pickering for Plaintiff and Appellant.

Franklin Tom, G. W. McDonald, George A. Crawford and Diane Coleman for Defendants and Respondents.

## OPINION

McCLOSKY, J.—Appellant Blinder, Robinson & Co., Inc. (hereafter BR) appeals from that part of the judgment of the Los Angeles Superior Court which denied petitioner's "Verified Petition for Depositions of Robert Davenport, Thomas J. Amy and Rodney K. Vincent" after the Commissioner of Corporations (commissioner) filed an accusation against BR.

### CONTENTIONS

Appellant contends that (1) the commissioner abused his discretion by denying petitioner (appellant herein) the opportunity to obtain testimony relevant to the admissibility and weight of the only evidence alleged in support of the accusation and to obtain evidence in mitigation, asserting that (a) BR has a right to challenge the commissioner's proposed use of judicial notice and asserting further that (b) BR is entitled to obtain and present evidence in mitigation; and (2) the procedure for obtaining compulsory process for out-of-state witnesses embodied in Government Code section 11511 is unconstitutional as a violation of due process, both on its face and as applied in these proceedings, asserting that (a) Government Code section 11511 is unconstitutional on its face because it vests the commissioner with discretion to determine the materiality of deposition testimony from out-of-state witnesses and constitutes an impermissible combination of prosecutorial and adjudicatory functions and that (b) the commissioner's determination of the materiality of the requested deposition testimony pursuant to Government Code section 11511, as applied, violated BR's due process rights.

### FACTS AND RELEVANT PROCEDURAL HISTORY

On October 18, 1984, the commissioner filed an accusation before the Department of Corporations of the State of California seeking to revoke BR's broker-dealer certificate, pursuant to Corporations Code section 25212, subdivision (c), which authorizes the commissioner to revoke a broker-dealer's license after finding revocation to be in the public interest. The commissioner alleged therein that prompt revocation was imperative and in "the public interest" because BR's "Uniform Application for Broker Dealer

Registration" (form BD) shows that BR is subject to at least two currently effective injunctive orders entered in the State of Virginia and the United States District Court for the District of Colorado. These, the accusation alleged, were as follows:

"A. VIRGINIA _____

"On January 20, 1982, the Virginia Corporations Commission permanently enjoined Respondent from acting as an unregistered broker-dealer. The Order was upheld on March 9, 1984 by a 'court of competent jurisdiction,' the Virginia Supreme Court.

". . . . . . . . . . . . . . . . . . . . . .

"B. UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO _____.

"On June 8, 1982, the United States District Court permanently enjoined Respondent from violating certain of the federal securities laws, including the anti-fraud provisions, after a complaint was filed by the Denver Regional Office of the Securities Exchange Commission. The Order of Permanent Injunction is currently in effect."

On October 25, 1984, pursuant to Corporations Code section 25212, BR submitted its "Notice of Defense," requesting a hearing on the commissioner's intended action. On November 5, 1984, the commissioner served his "Notice of Request to Take Compulsory Judicial Notice" on BR. The "notice" requested that the administrative law judge take "compulsory judicial notice" of the United States District Court and Virginia State Corporation Commission injunctions. (Evid. Code, § 452, subd. (d) and § 453.)

Pursuant to Government Code section 11511, BR served the commissioner with a verified petition for depositions on December 19, 1984, wherein it sought an order from the commission for the taking of the depositions of out-of-state residents Robert Denver, Thomas J. Amy and Rodney K. Vincent, all of whom were employees of the United States Securities and Exchange Commission (hereafter SEC) Denver Regional Office, Robert Shaftan, Irwin Lampert and Phillip Lowery, three private attorneys, and lastly, the deposition of Lewis Brothers, Jr., Esquire, Division of Securities, Virginia State Corporation Commission.

In that verified petition for depositions, BR set forth its reasons for needing the testimony of these individuals. These were that the commissioner was

proceeding against it based exclusively on the existence of the injunctions and that the only items of evidence the commissioner intended to present in the revocation hearing were certified copies of the injunctions, as to which he would ask the administrative law judge to take mandatory judicial notice. BR further alleged that it had an absolute right under Evidence Code section 455 to present evidence to the administrative law judge "'relevant to (1) the propriety of taking judicial notice of the matter; and (2) the tenor of the matter to be noticed.'" It averred that the evidence it sought to present by way of deposition was relevant to the propriety and tenor of any judicial notice. In addition, BR asserted that the commissioner apparently intended to present no evidence directed to the question of what penalty would be appropriate. BR averred that it also wished to obtain the deposition testimony because it would be relevant and material to the issue of whether any sanction would be appropriate, and, if so, what that sanction should be.

By letter dated December 27, 1984, the commissioner denied BR's verified petition for depositions and asserted that the administrative hearing was not an appropriate forum to raise questions about the injunctions.

BR then filed a petition for a writ of mandate in the Los Angeles Superior Court (pursuant to Code Civ. Proc., § 1085), to compel the commissioner to petition the Superior Court of Sacramento County for an order to take the requested out-of-state depositions.

On January 8, 1985, the superior court issued an alternative writ of mandate, commanding the commissioner to show cause why a peremptory writ should not be issued. The commissioner filed a reply memorandum of points and authorities.

Before the hearing on the peremptory writ of mandate, BR obtained sworn testimony from the three nongovernmental proposed deponents who were appellant's attorneys and withdrew its request for the depositions of those three witnesses. The superior court trial judge granted BR's request for a peremptory writ of mandate with respect to Mr. Brothers of the Virginia State Corporation Commission and ordered the commissioner to apply to the superior court in Sacramento County for an order for the taking of that deposition. The trial judge, however, denied the issuance of a peremptory writ with respect to the three employees of the SEC's Denver Regional Office. It is from that denial that this appeal is taken.

We shall hold that the superior court did not err in declining to issue the writ of mandate with respect to the proposed depositions of the SEC employees.

## DISCUSSION

■ Apart from Government Code section 11511,[1] appellant has no common law right to take the prehearing depositions it seeks. (*Stevenson* v. *State Bd. of Medical Examiners* (1970) 10 Cal.App.3d 433, 440 [88 Cal.Rptr. 815]; *Shivley* v. *Stewart* (1966) 65 Cal.2d 475 [55 Cal.Rptr. 217, 421 P.2d 65, 28 A.L.R.3d 1431]; *Romero* v. *Hern* (1969) 276 Cal.App.2d 787, 790 [81 Cal.Rptr. 281]; *Everett* v. *Gordon* (1968) 266 Cal.App.2d 667 [72 Cal.Rptr. 379].)

I

We therefore first consider appellant's contention that the procedure for obtaining compulsory process for out-of-state witnesses embodied in Government Code section 11511 is unconstitutional as a violation of due process, both on its face and as applied in these proceedings.

"Procedural due process does not require a trial before a court. A proceeding before an administrative officer or board is adequate if the basic requirements of *notice* and *opportunity for hearing* are met. [Citation.] And the sufficiency of the notice and hearing is determined by considering the purpose of the procedure, its effect on the rights asserted, and other circumstances. (*Anderson Nat. Bank* v. *Luckett* (1944) 321 U.S. 233, 64 S.Ct. 599, 606, 88 L.Ed. 692, 705 ['The fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked']; *Ohio Bell Tel. Co.* v. *Pub. Utilities Com.* (1939) 301 U.S. 292, 304, 57 S.Ct. 724, 730, 81 L.Ed. 1093, 1101.)" (5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 299, p. 3588.) The precise procedural formalities required by due process are undefinable and vary according to the factual context. "[P]rocedural due process in the administrative setting does not always require application of the judicial model." (*Dixon* v. *Love* (1977) 431 U.S. 105, 115 [52 L.Ed.2d 172, 181-182, 97 S.Ct. 1723]; italics in original.)

---

[1]Government Code section 11511 provides: "On verified petition of any party, an agency may order that the testimony of any material witness residing within or without the State be taken by deposition . . . . The petition shall set forth the nature of the pending proceeding; the name . . . of the witness whose testimony is desired; a showing of the materiality of his testimony; a showing that the witness will be unable or can not be compelled to attend; and shall request an order requiring the witness to appear and testify before an officer named in the petition for that purpose. Where the witness resides outside the State and where the agency has ordered the taking of his testimony by deposition, the agency shall obtain an order of court to that effect by filing a petition therefor in the superior court in Sacramento County."

The Administrative Procedure Act (Act), Government Code section 11500 et seq., codifies numerous rights in proceedings before administrative agencies. Included among those rights is the right of each party to call and examine witnesses and rebut evidence against it. (Gov. Code, § 11513.) To give substance to the right, a party must, of course, have the ability to compel the attendance of witnesses on relevant material matters. To compel the attendance of such out-of-state witnesses the Act provides in pertinent part that "[o]n verified petition of any party, an agency *may* order that the testimony of any material witness residing . . . without the State be taken by deposition . . . ." (Gov. Code, § 11511; italics added.)

Appellant contends that the statute is unconstitutional on its face because it provides that the prosecuting agency rather than an impartial hearing officer makes the determination to grant or deny this process, and passes on the materiality of the testimony sought.

Appellant argues that due process is violated where the individual responsible for the prosecution of an accusation also has the authority to make determinations concerning the materiality of the defendant's evidence, so as to effectively preclude the defendant's ability to obtain exculpatory evidence. It argues persuasively that a procedurally fair system cannot vest prosecuting attorneys with the discretion to make rulings on the relevance of their adversary's evidence. Yet, it argues, that is exactly what has occurred here. It states that senior corporation counsel George Crawford, in the name of the commissioner of corporations, filed and prosecuted the accusation against BR in the name of the same commissioner and claimed to exercise discretion under Government Code section 11511, in refusing to petition the Superior Court of the County of Sacramento for an order for the requested out-of-state depositions on the grounds that the testimony would be immaterial. That procedure, appellant argues, is insufficient to safeguard BR's due process rights.

In our view appellant's contention that Government Code section 11511 is facially unconstitutional and was unconstitutionally applied here is not without merit. As we shall explain below, however, we are compelled by the principle of stare decisis to rule adversely to appellant on this point.

Government Code section 11511 is part of the Act of 1945, which has repeatedly been held constitutional. Addressing the point more specifically raised herein, in the case of *Hohreiter* v. *Garrison* (1947) 81 Cal.App.2d 384, 392-393 [184 P.2d 323], the court held the Act constitutional stating: "It has been specifically held in this state that the mere fact that the administrative board is both accuser and judge in no way adversely affects

the legal rights of the accused." While that rule is logically subject to question, it is the law of this and most states, and we follow it.

Appellant's complaint in this case is even more specific. It is that Government Code section 11511 was unconstitutionally applied because the same person, senior corporation counsel George Crawford, filed and prosecuted the accusation against BR, claimed to exercise discretion under Government Code section 11511 and refused to petition the appropriate court for an order to take the requested out-of-state depositions on the ground that the testimony would be immaterial. Second it contends that a procedurally fair system cannot vest prosecuting attorneys with the discretion to make rulings on the relevance of the evidence of their adversaries. Yet, BR claims that is exactly what has occurred in this case. We consider these contentions together.

Three cases are cited by appellant in supposed support of appellant's position on this point. They are *Applebaum* v. *Board of Directors* (1980) 104 Cal.App.3d 648 [163 Cal.Rptr. 831], *Hackethal* v. *California Medical Assn.* (1982) 138 Cal.App.3d 435 [187 Cal.Rptr. 811], and *In re Murchison* (1955) 349 U.S. 133 [99 L.Ed. 942, 75 S.Ct. 623].

*Applebaum* involved a disciplinary procedure of a private medical board of a hospital that took away a doctor-staff member's obstetrical privileges. That court reiterated the general and California rule that "due process is not violated by the combination of investigative and adjudicative functions unless the facts of a case show foreclosure of fairness as a practical or legal matter." (*Applebaum* v. *Board of Directors, supra,* 104 Cal.App.3d at p. 658; see also *Withrow* v. *Larkin* (1975) 421 U.S. 35 [43 L.Ed.2d 712, 95 S.Ct. 1456].)

The *Applebaum* court commented unfavorably on the procedures employed in that case and contrasted them with those used in cases involving designated state agencies. In doing so the *Applebaum* court said: "California law requires that disciplinary hearings of designated state agencies be conducted by administrative law judges from the state Office of Administrative Hearings. (Gov. Code, § 11502.) The administrative law judge prepares and submits a proposed decision for the agency's consideration. (Gov. Code, § 11517, subd. (c).) Although the agency need not adopt the decision, it is required to review the record of the hearing before arriving at a different conclusion. (*Ibid.*) These statutory requirements reflect legislative concern with due process and fair hearings in administrative proceedings. (Clarkson, *Practice Before California Licensing Agencies* (1956) 44 Cal.L.Rev. 197.)
. . . .

"In the case before us, of course, there was no administrative law judge or other third party involved in the factual determinations which resulted in revocation of plaintiff's obstetrical privileges. The investigation was not conducted by state employees insulated from the adjudicatory body by layers of public bureaucracy; it was done by a group which included the instigator of the charges, had overlapping membership in the body (executive committee) which reviewed both the initial and final decisions and to which the majority of the formal adjudicators later belonged. . . .

"As a practical matter and without in any way impugning their good faith, the general practitioner and pediatric specialist members of the ad hoc committee were in an extremely difficult position. The charges were brought by one of the two specialists on whom they were accustomed and, indeed, required to rely for obstetrical expertise and with whom they were in frequent and intimate professional contact. His associate supported the charges and the committee was thus presented with a solid front of the only special expertise available to it. To presume impartiality of the ad hoc committee in such circumstances goes beyond what can reasonably be expected of human beings in this professional setting. In this situation a realistic appraisal of psychological tendencies and human weakness compels the conclusion that the risk of prejudgment or bias was too high to maintain the guarantee of fair procedure. [Citation.]" (*Applebaum* v. *Board of Directors, supra,* 104 Cal.App.3d at pp. 659-660.)

Although the comments of the *Applebaum* court concerning "realistic appraisal of psychological tendencies and human weakness and bias" are apt and would appear to be equally applicable to what occurred in the case at bench, the *Applebaum* court used the procedures employed under our Act as a model of fair procedure.

*Hackethal* v. *California Medical Assn., supra,* 138 Cal.App.3d 435, involved an action brought by an expelled member of a private county medical association seeking a peremptory writ of mandate order against the association to reinstate him. The court issued the writ, holding the association's hearing procedures were not fair and did not meet the common law standards of fair procedure. The record showed that despite the existence of bylaws giving the member the right to challenge council members, that member was not afforded a reasonable opportunity to establish grounds for such challenges because his right to voir dire was unduly limited and there was no practical method provided for testing the impartiality of the panel. That right, *Hackethal* held, was essential because that panel was to determine if charges should be filed and was to try the charges as well. Further, private executive sessions of the association's judicial council were held during the course of which hearings the referee and counsel for the society were present

while the member and his counsel were excluded. These procedures, *Hackethal* held, clearly suggested a lack of fair procedure. The member was also denied a copy of some of the documentary evidence that formed the basis of the charges and that was made available to members of the Judicial Council. Lastly, in violation of the society's own bylaws which provided for a hearing based on the clear and convincing proof standard the council considered the charges on a standard of preponderance of the evidence. Those conditions, the *Hackethal* court held, violated the requirements of fair procedures by which the private organization sought to expel a member.

Once again those *Hackethal* conditions were completely distinguishable from the case at bench. Moreover, at the time of the court hearing on the writ in the case before us the proper administrative hearing before an independent administrative law judge was still in the offing.

In *In re Murchison, supra,* 349 U.S. 133, a Michigan state judge served as a "one-man-jury" under Michigan law in investigating crime. Later, the same judge, after a hearing in open court, adjudged two of the witnesses guilty of contempt and sentenced them to punishment for events which took place before him in the grand jury proceedings. Understandably the United States Supreme Court majority held that it was a violation of due process for the "judge-grand jury" to summarily try and sentence the witnesses for contempt committed before him in the secret "judge-grand jury" hearing, for the trial judge was at the same time the complainant, indicter and prosecutor.

The United States Supreme Court considered only "the due process challenge to trial by the judge who had conducted the secret 'one-man grand jury' proceedings" and stated that "[i]t would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused as a result of his investigations. . . . A single 'judge-grand jury' is even more a part of the accusatory process than an ordinary lay grand juror. Having been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused. . . . Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer. It is true that contempt committed in a trial courtroom can under some circumstance be punished summarily by the trial judge. [Citation.] But adjudication by a trial judge of a contempt committed in his immediate presence in open court cannot be likened to the proceedings here. For we held in the *Oliver* [*In re Oliver* (1947) 333 U.S. 257, 273-278 (92 L.Ed. 682, 694-697, 68 S.Ct. 499)] case that a person charged with contempt before a 'one-man grand jury' could not be summarily tried. . . . [¶] . . . There were no public

witnesses upon whom petitioners could call to give disinterested testimony concerning what took place in the secret chambers of the judge." (*In re Murchison, supra,* 349 U.S. at pp. 136, 137-138 [99 L.Ed. at pp. 946-947].)

The *Murchison* majority held that under those circumstances the judge himself might be a very material witness in a later trial for contempt before whom the defendant would be "deprived of examining or cross-examining him or else there would be the spectacle of the trial judge presenting testimony upon which he must finally pass in determining the guilt or innocence of the defendant. In either event the State would have the benefit of the judge's personal knowledge while the accused would be denied an effective opportunity to cross-examine. The right of a defendant to examine and cross-examine witnesses is too essential to a fair trial to have that right jeopardized in such way." (*In re Murchison, supra,* 349 U.S. at p. 139; fn. omitted [99 L.Ed. at p. 948].)

The case at bench presents a different aspect. Mr. Crawford and the commissioner are not the same person. The proceedings were not secret and the adjudication in this case will ultimately be made by the commissioner or the courts after an initial hearing before an independent and impartial administrative law judge. This is a procedure which has been approved by many appellate courts in the past. (See, e.g., *Griggs* v. *Board of Trustees* (1964) 61 Cal.2d 93 [37 Cal.Rptr. 194, 389 P.2d 722]; *Douglass* v. *Board of Medical Quality Assurance* (1983) 141 Cal.App.3d 645 [190 Cal.Rptr. 506]; *Chosick* v. *Reilly* (1954) 125 Cal.App.2d 334 [270 P.2d 547]; *Withrow* v. *Larkin, supra,* 421 U.S. 35, 38 [43 L.Ed.2d 712, 718].) That, however, does not wholly resolve the specific issue as to the refusal of the commissioner to honor BR's request that he seek an order for the depositions of the three Colorado SEC employees.

Moreover, as the Supreme Court stated in *Withrow* v. *Larkin, supra:* "The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

"Very similar claims have been squarely rejected in prior decisions of this Court." (*Withrow* v. *Larkin, supra,* 421 U.S. at p. 47 [43 L.Ed.2d at pp. 723-724].)

"This Court has also ruled that a hearing examiner who has recommended findings of fact after rejecting certain evidence as not being probative was not disqualified to preside at further hearings that were required when reviewing courts held that the evidence had been erroneously excluded. *NLRB* v. *Donnelly Garment Co.* [(1947)] 330 U.S. 219, 236-237 [91 L.Ed. 854, 867, 67 S.Ct. 756]. . . .

"More recently we have sustained against due process objection a system in which a Social Security examiner has responsibility for developing the facts and making a decision as to disability claims, and observed that the challenge to this combination of functions 'assumes too much and would bring down too many procedures . . . .'" (*Withrow* v. *Larkin, supra,* 421 U.S. at p. 49 [43 L.Ed.2d at p. 725].)

"'[T]he case law, both federal and state, generally rejects the idea that the combination [of] judging [and] investigating functions is a denial of due process . . . .' 2 K. Davis, Administrative Law Treatise, § 13.02, p. 175 (1958)." (*Withrow* v. *Larkin, supra,* 421 U.S. at p. 52 [43 L.Ed.2d at p. 726].)

"Plainly enough, *Murchison [In re Murchison, supra,* 349 U.S. 133] has not been understood to stand for the broad rule that the members of an administrative agency may not investigate the facts, institute proceedings, and then make the necessary adjudications. The Court did not purport to question the *Cement Institute* case, *supra* [*FTC* v. *Cement Institute* (1948) 333 U.S. 683], or the Administrative Procedure Act and did not lay down any general principle that a judge before whom an alleged contempt is committed may not bring and preside over the ensuing contempt proceedings. The accepted rule is to the contrary. *Ungar* v. *Sarafite* [(1964)] 376 U.S. 575, 584-585 [11 L.Ed.2d 921, 928-929, 84 S.Ct. 841]; *Nilva* v. *United States* [(1957)] 352 U.S. 385, 395-396 [1 L.Ed.2d 415, 423-424, 77 S.Ct. 431]." (*Withrow* v. *Larkin, supra,* 421 U.S. at pp. 53-54 [43 L.Ed.2d at p. 727].)

Where due process requires an administrative hearing, an individual has the right to a tribunal which meets at least currently prevailing standards of impartiality. Biased decisionmakers are constitutionally impermissible and even the probability of unfairness is to be avoided.

What troubles us about Government Code section 11511, and its application in this case is not merely the combination of investigatory, accusatory and adjudicatory functions in one person. It is, rather, the additional power of that same person to make the decision denying the accused the right to produce evidence at the hearing. This is accomplished by effectively denying the accused the right to take depositions without affording it the right to a review of that denial by a neutral or impartial person at an early and

meaningful stage of the administrative proceedings before the burden of proof has shifted to the accused.

Notwithstanding appellant's assertion to the contrary, there is nothing in the record which suggests any actual bias of Mr. Crawford or the commissioner or that suggests that appellant cannot receive a fair and impartial hearing that complies with current law with due consideration of all material and relevant evidence. We are therefore bound on this point by the decisions in *Withrow* v. *Larkin; N.L.R.B.* v. *Donnelly Garment Co.* and the California cases upholding the constitutionality of the Act.

 Appellant next urges that the commissioner's determination of the materiality of the requested deposition testimony pursuant to Government Code section 11511, as applied, violated BR's due process rights by preventing BR from presenting relevant evidence.·

In denying the request for the out-of-state depositions the commissioner stated that "[f]or purposes of the present action, the commissioner contends that the only material issues are the existence and content of the cited injunctions, and that those issues are resolved on the face of the documents." Appellant "notes" that BR "is entitled by statute to (1) challenge the taking of judicial notice of the injunctions, and (2) present evidence in mitigation." We agree with those general propositions. We disagree, however, with appellant's contention that "the commissioner's denial of the requested depositions was [therefore] arbitrary and a denial of due process" under the current state of the law. Moreover, our review is of whether there is substantial evidence to support the superior court judge's determination.

BR makes only a minimal and conclusory showing or offer of proof to support its claim that the proposed testimony of the three SEC employees was material. Nor has it shown that the exclusion of its right to take their depositions has resulted in a miscarriage of justice. (Art. VI, § 13 of the Cal. Const; see also Code Civ. Proc., § 475.)

After hearing BR's offer, the learned trial judge observed that appellant and its counsel "were there litigating and appealing and arguing in the Colorado courts, and that is why I say that the evidence that these witnesses might give would be much too collateral and farther back. It just doesn't follow for me. [¶] I will grant the motion as to . . . Lewis Brothers from the State of Virginia. . . . Deny as to the others. . . ." We also note that nowhere in the record cited to us does the appellant show how the testimony of the Denver SEC witnesses would be material or relevant on the subjects of mitigation or public interest.

 Respondent argues that "[s]o long as 'fairness' is not 'foreclosed' in the context of an ultimate adversary decision, such inappropriate requests can legitimately be evaluated and denied by an agency head. The agency head must necessarily make such a decision with the knowledge that a dissatisfied litigant can and will obtain subsequent judicial review on mandamus proceedings before the Superior Court. [¶] As a practical matter, it is ultimately this spectre of subsequent impartial review by the Superior Court that prevents the dual and discretionary role authorized by Government Code Section 11511, from being a denial of due process. The agency, and its head, know for a certainty that dissatisfied litigants can obtain an impartial review. The agency, and its head, know for a certainty that the Superior Court can be expected to notice any improper conduct or abuse of discretion occurring in the course of the administrative proceeding. The agency, and its head, are well aware that the Superior Court will overturn an administrative decision where necessary or remand for further proceedings." Under the compulsion of the authorities we have heretofore cited, we agree.

 Appellant has had the opportunity to obtain the sworn testimony of everyone but the three Denver SEC employee attorneys. After granting the petition as to Mr. Brothers, the Virginia witness, the superior court trial judge reviewed and denied the petition for a writ to compel the commissioner to proceed to obtain those out-of-state depositions. It is difficult to believe that the requested depositions were expected to be of any significant help to appellant since it waited until less than three weeks before the scheduled administrative hearing to institute its request for the commissioner to petition the Superior Court of Sacramento County to order these seven out-of-state depositions in Colorado and Virginia. This was scarcely indicative of a realistic and timely attempt on BR's part to go through the requisite administrative and superior court proceedings necessary to make the arrangements for those depositions, complete them and have them transcribed before the administrative hearing. BR has not shown that decision denying the writ as to the Denver SEC witnesses was either erroneous or an abuse of the superior court trial judge's discretion.

We therefore reject BR's contentions in this regard.

## II

BR also contends that the commissioner abused his discretion by denying it the opportunity to obtain testimony relevant to the admissibility and weight to be given to the Colorado and Virginia injunctions, the only evidence alleged in support of the accusation against BR, and by denying it the opportunity to obtain evidence in mitigation. BR alleges that it sought this

evidence to show that taking judicial notice of the Colorado and Virginia injunctions would be improper or of little relevance and that its right to raise such issues is established by Evidence Code section 455, subdivision (a).

BR also contends that it sought to obtain evidence showing that revocation of its broker-dealer certificate would be contrary to the public interest. It claims that its right to raise this issue is established by Corporations Code section 25212, and that the commissioner's refusal of its request that he obtain commissions for depositions arbitrarily prevented BR from acquiring competent evidence on issues material to its defense and thus constituted a separate abuse of discretion. BR admits that the superior court corrected the commissioner's decision with respect to the Virginia witness but alleges that the court's failure to do the same with respect to the Colorado witnesses constitutes reversible error.

We have reviewed the record including the informal offers of proof as to the expected testimony of the Colorado SEC witnesses. We are bound to view the evidence in the light most favorable to the denial of the writ and are required to indulge in all intendments and reasonable inferences to sustain the denial. (*Kennedy* v. *South Coast Regional Com.* (1977) 68 Cal.App.3d 660 [137 Cal.Rptr. 396].) The scope of our appellate review on the denial of a petition for a writ of mandate is to determine whether the judgment of the trial court was supported by substantial evidence and constituted a proper exercise of discretion by *that* court. (See *Sheard* v. *Superior Court* (1974) 40 Cal.App.3d 207 [114 Cal.Rptr. 743] and *Centinela Valley Secondary Teachers Assn.* v. *Centinela Valley Union High Sch. Dist.* (1974) 37 Cal.App.3d 35 [112 Cal.Rptr. 27].) We conclude that the trial court's determination was supported by substantial evidence and did not constitute an abuse of discretion.

Because our resolution of the above issues is dispositive of respondent's other contentions we need not, and do not, discuss them.

The trial judge was troubled by the possible future constitutional problems involved in allowing the head of an administrative agency to deny an accused the right to present evidence produced by way of depositions without affording that accused the right to an early meaningful review of that decision by a disinterested third party. So are we. While the trial court's decision to deny the writ as to the three Colorado SEC employees was supported by substantial evidence in this case, it is not difficult to foresee situations in the future where the result would be otherwise. This is, as we have stated above, a matter where the principle of stare decisis compels the conclusion we reach here.

The judgment is affirmed.

Woods, P. J., and Recana, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied September 11, 1986.

*Assigned by the Chairperson of the Judicial Council.