[No. G008913. Fourth Dist., Div. Three. June 28, 1991.]

PAUL D. ROSENBLIT, Plaintiff and Appellant, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Defendant and
Respondent;
FOUNTAIN VALLEY REGIONAL HOSPITAL AND MEDICAL
CENTER, Real Party in Interest and Respondent.

COUNSEL

Paul D. Rosenblit, in pro. per., for Plaintiff and Appellant.

Catherine I. Hanson as Amicus Curiae for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Weissburg & Aronson, Mark A. Kadzielski and Lowell C. Brown for Real Party in Interest and Respondent.

## OPINION

**WALLIN, J.**—Dr. Paul D. Rosenblit appeals the denial of his petition for a writ of mandate to compel Fountain Valley Regional Hospital and Medical

Center (Hospital) to reinstate his medical staff membership and clinical privileges. The trial court specifically rejected the doctor's claim he was denied a fair hearing. However, the California Medical Association (CMA) filed a compelling amicus curiae brief urging us to remand the case to the superior court to grant the petition and direct Hospital to afford Rosenblit a fair procedure. Having independently reviewed the fairness of the administrative proceedings as a question of law, we agree with CMA and reverse.

Dr. Paul Rosenblit, an endocrinologist, obtained medical staff privileges at Hospital in 1986. He subscribes to a method for managing diabetes which is different from the approach used by his colleagues on staff at Hospital. In June 1987 one of his patients died, triggering a review by a Hospital committee. In August, Rosenblit was informed that he would be proctored on all of his admissions and consultations purportedly because there were problems with his fluid and diabetic management in some cases.

On January 28, 1988, a newly appointed executive committee of Hospital staff summarily suspended Rosenblit's staff privileges "due to poor clinical judgment and violation of Medical Staff Bylaws regarding providing coverage for the care of patients when not available." By letter dated February 2, Hospital provided Rosenblit a list of 30 charts "which were reviewed and found to have problems in one or more of the following: a) fluid management b) diabetic management c) clinical judgment." Rosenblit made a timely request for a review hearing under Hospital bylaws.

On February 16, Hospital notified Rosenblit the hearing had been scheduled for March 9 and legal counsel would not be allowed. By letters dated February 17 and February 22, Rosenblit, through counsel, requested a more complete statement of the charges, including the specific acts or omissions alleged, as required by Hospital bylaws. He also demanded: A list of the proposed members of the review committee to enable him to prepare questions to uncover any conflict or bias; a list of witnesses; copies of all medical charts and records for his own and his experts' review; and a postponement of the hearing because of the inadequacy of the notice of the alleged misconduct. Rosenblit, also through counsel, objected to the denial of the right to have his attorney present at the review hearing and to the composition of the hearing panel.

On February 25, Hospital insisted Rosenblit had been given adequate notice of the charges and was not entitled to approve the members of the hearing panel. Hospital rejected the request for a postponement without a proper showing of good cause. Rosenblit's lawyer's third letter to Hospital reflects the tone of the proceedings at these early stages: "I have read with interest your letter of February 25, 1988. Your knowledge of the law

applicable to the rights of a physician in peer review is obviously limited. That observation is at best kind. I would strongly suggest that you consult with your hospital counsel before addressing any further legal issues. [¶] A list of the proposed members of the Judicial Review Committee shall be provided before we proceed in this matter. Your bylaws are not controlling when we are dealing with the procedural due process rights of Dr. Rosenblit. Your interpretation is of no value. It is the court's application of the law which dictates the procedure and process in these matters. Each physician, including you, has the right to challenge the make-up of his jury. If you violate this basic right then the proceeding is void ab initio. [¶] Addressing your proper notice of charges, the same is defective. The language used by Mr. Szekrenyi suggests three areas of concern. Perhaps we could take the guess work [*sic* ] out of his February 2nd letter! We expect and demand that you set forth the charge as to each case so that Dr. Rosenblit can prepare specific responses to the alleged misconduct."

Rosenblit echoed the same objections in his personal letter of March 3. He had requested reviewer comments on the problem charts to provide him the opportunity to prepare his defense. These requests had been denied. Rosenblit writes: "You have set a date for the hearing. Your date could have been reasonable had you complied with my request for reviewer comments on the 30 charts, in order for me to defend the alleged 'problems'. Furthermore, my 'witnesses' must have copies of the charts for review. I find your negligence in complying with my requests at a minimum, suspicious."

Again Hospital refused to postpone the hearing. On March 4, Hospital notified Rosenblit he had not made a sufficient showing of good cause to justify a postponement. Dr. Harold Kravitz, chief of staff, concluded: "As regards the list of cases with chart numbers we have sent to you in the past: to be more specific all of the charts have problems in diabetic management and clinical judgment." Kravitz then listed four charts representative of problems in fluid management.

In an almost desperate attempt to save his career, Rosenblit again wrote to Hospital on March 7 begging for more information about the problem charts. "As you know, Dr. Eilbert convinced the majority of executive committee members, many of whom had no knowledge of preceeding [*sic*] meetings, that there were 30 charts with alleged problems. I found no hypoglycemia or no fluid management involved in the following [15] charts. I must assume that there is an 'alleged' problem with clinical judgement [*sic*] . . . . Please take the guesswork out of these charts and present me 'in writing, in concise language, the acts or omissions with which' . . . I am . . . charged (Article VIII, Part B, Section 5)." On the date of the scheduled hearing, Hospital

granted Rosenblit a postponement assertedly because one of his witnesses would be unavailable and assented to a disclosure of the requested comments. The comments on 14 charts were provided on March 14 and the hearing was scheduled for April 7.

Hospital never provided Rosenblit with copies of the problem charts. Eventually he was allowed access to them and prepared detailed summaries from his own inspection. One of his expert witnesses would not testify without the opportunity to personally review the charts. Hospital was asked several times, in writing, to provide copies. Since Rosenblit did not specifically request Hospital to provide his expert witnesses access to the charts, Hospital now contends that if such a request had been made, it would have been granted, even though it did not suggest this possibility in any one of its many letters refusing to provide copies. Eventually, Rosenblit's primary expert's credibility was challenged for his failure to review the charts Hospital refused to copy.

On the rescheduled hearing date, Hospital notified Rosenblit the hearing would be postponed for the convenience of a member of the panel. The hearing finally convened on April 28. Rosenblit provided the hearing officer with eight written questions he wanted to ask each member of the hearing panel to determine individual or collective bias. The panel met secretly for approximately 25 minutes, after which the hearing officer reported he was satisfied that each member felt he was not biased and could afford Rosenblit a fair hearing. These discussions were not recorded. Following the hearing officer's report on the result of the secret voir dire of the panel by the panel, he stated: "Dr. Rosenblit, since you have raised this issue, you do have the right to question any of the panel members if you feel that that's necessary so that you are satisfied in your own mind before this hearing proceeds that the panel is not biased or prejudiced against you, and that they can give you a fair hearing." Rosenblit replied, "I am satisfied."

The hearing was adjourned with an agreement to reconvene as soon as possible, and on May 10, Hospital unilaterally announced it would be held on June 16. A case-by-case analysis of the problem charts was conducted. Rosenblit presented an extensive defense, personally testifying to refute the charges and introducing expert opinion and medical journals and treatises.

On June 30, the hearing panel rendered its findings and recommendations. The panel found that Rosenblit had not shown that his suspension based on his "exercise of poor clinical judgment was made unreasonably, not sustained by the evidence, or unfounded. [Sic.]" The panel did find he had sustained his burden of proving he had not violated the medical staff bylaws

regarding his responsibility to provide coverage for the care of his patients when he was not available.

On August 8, Rosenblit was informed the medical staff executive committee had reviewed the findings and recommendations of the hearing panel and based thereon, he was to remain on temporary suspension pending a review by three independent endocrinologists. Rosenblit filed a timely request for appellate review of the committee's decision, but simultaneously requested the appellate proceedings be stayed pending the results of the independent endocrinologists' review. Hospital directed Rosenblit to request a continuance at the appellate review hearing. At that time, a continuance was granted but Hospital would not consent to stay the appeal process while the outside endocrinologists conducted their investigation.

The appellate review was undertaken a week later with the parties still at an impasse. Rosenblit insisted that appellate review should follow the independent endocrinologists' review, and Hospital again refused to stay the appellate process. The hearing was adjourned without a substantive review.

Again Rosenblit's attorney objected to Hospital's violation of his right to a fair procedure. He wrote: "I am now informed that the 'Board' is not accepting the recommendations of the Executive Committee as set forth in Mr. Szekrenyi's letter of August 8, 1988. Apparently there is no review underway by three independent endocrinologists. The handling of Dr. Rosenblit's Judicial Review Committee hearing and this sham Appellate Review constitutes an unjustifiable and irresponsible defiance of Dr. Rosenblit's rights. [¶] I wonder, Dr. Fishman, if you have disclosed to Dr. Blau and Dr. Pham that you were involved as the primary physician in the case of [Jane Doe] a chart contained in the Notice of Charges. Your obvious conflict, based on your open criticism of Dr. Rosenblit in front of the Hospital staff should demonstrate clearly that these proceedings are contrived and are in violation of the most elementary due process rights. . . . [¶] I should note to you, since this letter is being received by other members of the Board and Executive Committee, that the Chairman of the Judicial Review Committee, Dr. Tejunder Kalra, was the gastroenterologist who worked on the [Jane Doe] case. The simplest application of due process and application of your own By-laws prohibits both you as Chairman of the Appellate Board and Dr. Kalra, as Chairman of the Judicial Review Committee, to sit in a position of judgment." Finally, on October 6, Rosenblit was advised that the board of directors accepted the recommendation of the appellate review committee to permanently suspend his medical staff membership and privileges.

The trial court denied the petition for a writ of mandate, rejecting Rosenblit's contentions the administrative proceedings had been unfair and finding

substantial evidence to support Hospital's revocation of his clinical privileges.

## I

### SCOPE OF APPELLATE REVIEW

The threshold inquiry is whether Rosenblit received a fair hearing. While much has been written about the scope of appellate review of the substantive issues involving a physician's hospital privileges or admission to professional societies, very little has been articulated about the scope of review of a fair hearing finding. (See, e.g., *Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162]; *Lewin v. St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368 [146 Cal.Rptr. 892].)

The trial court found Rosenblit had received a fair hearing. Hospital argues appellate review is limited to a review of the record for substantial evidence to support this finding. It relies on Code of Civil Procedure section 1094.5, subdivisions (b) and (d), which direct the trial court to determine whether there was a fair administrative trial. An abuse of discretion is established if Hospital did not proceed in the manner required by law or its findings are not supported by the weight of the evidence. (Code Civ. Proc., § 1094.5, subds. (b) & (d).) Hospital contends that the fair hearing issue was presented to the trial court for the first time and, therefore, the trial court's factual finding must be sustained if supported by substantial evidence. (*Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 135 [181 Cal.Rptr. 732, 642 P.2d 792].)

 Amicus curiae argues the fair hearing finding was a conclusion of law, not a finding of fact, and requires a de novo review of the administrative record. (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614 [166 Cal.Rptr. 826, 614 P.2d 258]; *Hackethal v. California Medical Assn.* (1982) 138 Cal.App.3d 435 [187 Cal.Rptr. 811].) Amicus curiae is correct.

In several cases, the Supreme Court has conducted an independent scrutiny of the fair hearing claims without articulating the appropriate scope of review. (*John A. v. San Bernardino City Unified School Dist.* (1982) 33 Cal.3d 301 [187 Cal.Rptr. 472, 654 P.2d 242]; *Miller v. Eisenhower Medical Center, supra*, 27 Cal.3d 614; *Anton v. San Antonio Community Hosp., supra*, 19 Cal.3d 802.) In each case, the Supreme Court determined whether the administrative proceedings were conducted in a manner consistent with the minimal requisites of fair procedure demanded by established common law principles. Its determination was based, however, on its independent evaluation of fairness. Hospital has not cited a single Supreme Court case, and we

have found none, restricting review of a fair procedure challenge to a deferential search for substantial evidence.

In *Lewin* v. *St. Joseph Hospital of Orange, supra*, 82 Cal.App.3d 368, a physician sought a writ of mandate under Code of Civil Procedure section 1085 to compel the hospital to operate its hemodialysis facility on an open staff basis. The trial court granted the petition, finding the actions by the hearing committee were unjustified, arbitrary, and not supported by substantial evidence.

The *Lewin* court reiterated well-established principles of appellate review. ■ In administrative mandamus, where the trial court has properly exercised its independent judgment, the trial court's factual determinations are conclusive on appeal if supported by substantial evidence. (82 Cal.App.3d at p. 386.) If, however, the proper scope of review in the trial court was whether the agency's decision is supported by substantial evidence, the appellate court's role is the same as the trial court's, and both review the decision to determine whether it is supported by substantial evidence. (*Ibid.*) The issue presented in *Lewin* was the scope of review when the trial court was limited to determining whether the decision was arbitrary, capricious, entirely lacking in evidentiary support, contrary to established public policy, unlawful or procedurally unfair.

Directly addressing the scope of appellate review, the court concluded: "There might be foundational matters of fact with respect to which the trial court's findings would be conclusive on appeal if supported by substantial evidence. However, the ultimate questions, whether the agency's decision was . . . unlawful or procedurally unfair, are essentially questions of law. With respect to these questions the trial and appellate courts perform essentially the same function, and the conclusions of the trial court are not conclusive on appeal." (82 Cal.App.3d at p. 387, fn. omitted.) The review of procedural issues, whether presented in mandamus proceedings brought under Code of Civil Procedure sections 1085 or 1094.5, should be the same. That is, foundational factual findings must be sustained if supported by substantial evidence; however, the ultimate determination of whether the administrative proceedings were fundamentally fair is a question of law to be decided on appeal. (*Bowman* v. *City of Petaluma* (1986) 185 Cal.App.3d 1065, 1073] [230 Cal.Rptr. 413]; *Alba* v. *Los Angeles Unified School Dist.* (1983) 140 Cal.App.3d 997, 1005 [189 Cal.Rptr. 897].)

Nor does Code of Civil Procedure section 1094.5, subdivisions (b) or (d), compel a different result. Section 1094.5 merely confers upon the trial court original jurisdiction to decide whether there was a fair trial and whether the agency proceeded in a manner required by law. The section says nothing

about the scope of appellate review nor does it characterize the trial court's determination as a finding of fact.

Hospital relies on the one appellate opinion suggesting a trial court's fair trial finding is reviewed under the substantial evidence test. In *Western Air Lines, Inc.* v. *Schutzbank* (1968) 258 Cal.App.2d 218 [66 Cal.Rptr. 293], the court wrote: "A finding of an unfair trial, supported by substantial evidence, is, of course, sufficient to support the trial court's judgment. The authorities hold that if Western was deprived of a fair trial at the administrative level, this is a question of fact to be determined upon a nisi prius basis by an independent weighing of the evidence by the trial court." (*Id.* (at p. 226.) To the extent *Western* is inconsistent with the scope of review articulated in *Lewin* v. *St. Joseph Hospital of Orange, supra,* 82 Cal.App.3d 368, we decline to follow it. Moreover, upon close scrutiny, the process utilized by the court seems to undermine the standard of review it purports to follow.

In *Western,* the trial court found a corporation had not been afforded fair proceedings before the Commissioner of Corporations. Following an exhaustive analysis, the Court of Appeal came to the opposite conclusion without reference to the substantiality of the evidence. The court independently determined the commissioner had not been biased nor had he misled the parties.

 Here the trial court reviewed the administrative record and found the notice was adequate to enable Rosenblit to prepare a defense, he had sufficient access to the subject charts, his claim of bias was undermined by his ready acceptance of the hearing panel, the hearing officer's handling of an opportunity for him to present a challenge was fair, and Rosenblit failed to prove any actual prejudice. There was no dispute as to the facts underlying the trial court's conclusions. Therefore, we are at liberty to independently evaluate Rosenblit's fair hearing claims. (*Wood* v. *City Civil Service Commission* (1975) 45 Cal.App.3d 105, 111 [119 Cal.Rptr. 175].)

II

FAIRNESS OF THE PROCEDURE

Rosenblit contends he was denied his common law right to a fair procedure because: (1) Hospital gave him inadequate notice of the charges against him; (2) he was not provided an opportunity to copy the medical records in those cases in which his professional judgment was challenged; (3) Hospital's ultimate decision to revoke his staff privileges was vague and conclusory; (4) he was not provided a meaningful opportunity through voir dire to

determine any potential bias of those colleagues charged with judging him; and (5) Hospital improperly shifted to him the burden of proving his innocence.

■ "California courts have long recognized a common law right to fair procedure protecting individuals from arbitrary exclusion or expulsion from private organizations which control important economic interests." (*Applebaum* v. *Board of Directors* (1980) 104 Cal.App.3d 648, 656 [163 Cal.Rptr. 831].) Such a private organization's actions must be both substantively rational and procedurally fair. (*Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541, 550 [116 Cal.Rptr. 245, 526 P.2d 253].) What constitutes a fair procedure is not fixed or judicially prescribed. "[T]he associations themselves should retain the initial and primary responsibility for devising a method which provides an applicant adequate notice of the 'charges' against him and a reasonable opportunity to respond. In drafting such a procedure . . . the organization should consider the nature of the tendered issue and should fashion its procedure to insure a *fair* opportunity for an applicant to present his position. Although the association retains discretion in formalizing such procedures, the courts remain available to afford relief in the event of the abuse of such discretion." (*Id.* at pp. 555-556.)

■ In evaluating whether Hospital provided Rosenblit a fair hearing, the inadequacy of the notice, the refusal to permit copying of medical records, and the vagueness of the administrative findings are inextricably related. Having reviewed the cumulative impact of the manner in which Hospital initiated its proceedings, responded to Rosenblit's repeated requests for specificity, and ultimately rendered judgment on his professional competency, we conclude the proceedings had a notable stench of unfairness.

*Adequacy of Notice*

■ Notice of the charges sufficient to provide a reasonable opportunity to respond is basic to the constitutional right to due process and the common law right to a fair procedure. (*Salkin* v. *California Dental Assn.* (1986) 176 Cal.App.3d 1118, 1121 [224 Cal.Rptr. 352]; *Hackethal* v. *California Medical Assn., supra,* 138 Cal.App.3d 435, 442; *Applebaum* v. *Board of Directors, supra,* 104 Cal.App.3d 648, 657.) ■ Rosenblit was first informed his privileges were suspended due to his exercise of poor clinical judgment. Hospital supplemented its initial notification within a few days by expanding the charges to include problems either with "fluid management, diabetic management, or clinical judgment" in 30 different cases. The 30 questioned

charts were listed numerically without any indication as to what purported deficiency applied to each one.

Hospital required a painstaking effort by Rosenblit, not only to prepare his defense to the charges, but also to uncover the basis and scope of the allegations he was expected to defend. Either personally or through counsel, Rosenblit wrote six letters pleading for a description of the acts or omissions with which he was charged. Hospital refused twice, insisting he had been provided adequate notice. He asked Hospital to take the guesswork out of the proceedings by setting forth the charge on each case so he could prepare specific responses and to provide him with reviewer comments prepared by Hospital staff. Hospital responded that there were problems in every one of the cases with "diabetic management" and "clinical judgment." Reviewer comments on 14 charts were finally provided after the scheduled hearing was postponed and following this frustrating effort to ascertain what was claimed to be unacceptable treatment of each patient.

Incredibly Hospital now argues that Rosenblit presented a thorough defense to the treatment he prescribed in each of the 30 cases, and therefore, the notice was adequate. Its backward reasoning is disingenuous. Rosenblit obviously prepared a lengthy defense to the broad allegations made by Hospital on his treatment of 30 different patients. He had little choice. His ability to admit his patients to Hospital was threatened. Since Hospital refused to disclose the specific acts or omissions which allegedly harmed his patients, he was forced to prepare a wholesale defense to all possible charges. Hospital's duty to provide adequate notice is not excused because Rosenblit managed to present a defense to the charges. It is impossible to speculate how he might have defended had he been informed of the specific problems with each patient.

On appeal, Hospital perpetuates the antagonistic posture it assumed throughout the administrative proceedings. With six written objections to the adequacy of the notice assimilated in this record, Hospital insists that Rosenblit waived the deficiency by failing to raise the issue at his hearing. We need not respond.

*Opportunity to Make Copies of Medical Records*

At the same time Rosenblit was pleading for a more specific description of his alleged transgressions, he was also seeking copies of the problem charts to allow a thorough review by his experts. Hospital refused to provide copies. A similar complaint was made by the physician in *Hackethal* v. *California Medical Assn., supra,* 138 Cal.App.3d 435. "[H]e was denied a copy of some of the documentary evidence made available to the members

of the Judicial Council or that formed the basis of the charges. Such a denial would make it difficult to respond to the charges and present evidence to refute the evidence presented against him. Fair procedure would require disclosure of evidence forming the basis of the charges. It would also require that any evidence made available to the members of the panel also be made available to the petitioner." (*Id.* at p. 444.)

On appeal, Hospital claims it refused only to provide the copies at its expense, but Rosenblit could have paid a copy service to obtain the charts. Not surprisingly, Hospital failed to communicate this opportunity to Rosenblit, if in fact it ever existed. Given the number of requests for copies, we are unimpressed by Hospital's belated assertion that Rosenblit was welcome to copies at his own expense.

Nor does the mere fact Hospital allowed Rosenblit free access to the charts to make personal notes and summaries or the vigor with which he ultimately defended the vague charges levelled against him dispose of the fair procedure issue. Rosenblit and his experts should have been accorded the opportunity for a complete review of the medical records in which his care was purportedly below the standard of care in the medical community. It is impossible to speculate what defense he might have been able to offer if copies had been available for him and his experts, without the limitations imposed upon him.

## Sufficiency of the Findings

The findings of the hearing panel brought the proceedings full circle. They began with the vague accusation Rosenblit had exercised poor clinical judgment and they concluded with the finding he had failed to prove that his summary suspension based on his exercise of poor clinical judgment was made unreasonably, was not sustained by the evidence, or was unfounded. There were no specific findings regarding any of the 30 charts, nor any description of how Rosenblit endangered the patients entrusted to his care.

Such a conclusory verdict was an apt finish to the manner in which the proceedings were conducted from beginning to end. The procedure provided Rosenblit offends even an elementary sense of fairness. We need not decide whether Rosenblit waived his objection to the form or substance of the findings, as Hospital urges, because we are not concerned with the sufficiency of the findings to support the decision of either the administrative body or the trial court. Rather, we are concerned with fair play and fair treatment; with a physician's right to practice his profession; with the public's right to a diversity of opinion among competent specialists and a variety of treatment options.

The record demonstrates Hospital was dedicated to removing Rosenblit rather than providing a physician with a fair opportunity to defend his treatment regimen. Hospital resisted fair treatment at every crucial step of the proceedings. Since Rosenblit was kept in the dark about the specific charges made against him, of his asserted opportunity to obtain copies of the charts, and finally of the basis upon which the hearing panel decided the issues adversely to him, he was denied the basic right to a fair hearing. We agree with amicus curiae that such a charade does not serve the public interest.

*Voir Dire*

■ The right to a fair procedure includes the right to impartial adjudicators. (*Applebaum* v. *Board of Directors, supra,* 104 Cal.App.3d 648, 658.) Moreover, "[f]airness requires a practical method of testing impartiality." (*Hackethal* v. *California Medical Assn., supra,* 138 Cal.App.3d 435, 444.) Rosenblit contends the secret voir dire of the hearing panel impermissibly compromised his ability to obtain a fair hearing. We agree.

The court in *Hackethal* was confronted with a similar scenario. "Private executive sessions of the Judicial Council during the course of the hearings at which the referee and the counsel for the [San Bernardino California Medical Society] were included and at which the petitioner and his counsel were excluded present an unusual circumstance. That conduct of the Judicial Council would clearly suggest a lack of fair procedure . . . . Failure to object to those sessions should not be taken as binding waiver. The person whose rights are being determined should not be placed in a position of being required to object and thereby spur hostility or not object and thereby suffer waiver." (138 Cal.App.3d at p. 444.) The court also affirmed the trial court conclusion that voir dire had been unduly restricted. (*Id.* at p. 443.)

Here, rather than a private executive session, the hearing panel conducted a private voir dire. We observe that Hospital had barred Rosenblit's lawyer from the hearing. Alone and struggling to save his career, Rosenblit hardly could be expected to risk the wrath of those sitting in judgment by challenging their representation of impartiality. Hospital, as in *Hackethal,* argues Rosenblit waived his objection by readily accepting the panel. The trial court agreed. Under *Hackethal,* however, the trial court could not find that a layperson, unrepresented by counsel, in these circumstances waived his right to object.

Amicus curiae suggests that members of judicial review committees are under no explicit or statutory duty to recuse themselves, and therefore, a physician must be afforded the opportunity to conduct a liberal and probing oral examination of the committee members which is calculated to discover

possible bias or conflicts of interest. Here the chairman of the appellate board and the chairman of the judicial review committee had both been treating physicians on one of the cases under scrutiny. In circumstances such as these, an opportunity to expose potential bias is essential. Rosenblit was denied any semblance of fairness by the secret unreported voir dire conducted by the members themselves.

*Burden of Proof*

Rosenblit, supported by amicus curiae, contends Hospital's bylaws improperly shifted the burden of proof to him. We find no error in the allocation of the burden of proof. Hospital's bylaws provide in relevant part: "[I]t shall be incumbent on the Executive Committee whose recommendation prompted the hearing initially to come forward with evidence in support of its recommendation. Thereafter, the burden shall shift to the person who requested the hearing to come forward with evidence in his support. [¶] . . . [A]fter all the evidence has been submitted by both sides, the Hearing Panel shall recommend against the person who requested the hearing unless it finds that said person has proved that the recommendation of the Executive Committee whose decision prompted the hearing was unreasonable, not sustained by the evidence, or otherwise unfounded." Bylaw provisions on the burden of proof similar to Hospital's, or even less favorable to a physician, have been upheld. (*Anton* v. *San Antonio Community Hosp., supra*, 19 Cal.3d 802, 828; *Gill* v. *Mercy Hospital* (1988) 199 Cal.App.3d 889, 905 [245 Cal.Rptr. 304]; *Smith* v. *Vallejo General Hospital* (1985) 170 Cal.App.3d 450, 460 [216 Cal.Rptr. 189]; *Marmion* v. *Mercy Hospital & Medical Center* (1983) 145 Cal.App.3d 72, 95 [193 Cal.Rptr. 225].)

The judgment is reversed. The trial court is ordered to grant the petition for a writ of mandate compelling Hospital to afford Rosenblit a fair hearing. Rosenblit is awarded costs of appeal.

Sills, P. J., and Crosby, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied September 19, 1991. Panelli, J., was of the opinion that the petition should be granted.