[No. D032327. Fourth Dist., Div. One. Oct. 28, 1999.]

GAYLE BAUER, Plaintiff and Appellant, v.
CITY OF SAN DIEGO et al., Defendants and Respondents.

1284

## COUNSEL

Elizabeth R. Wilkie for Plaintiff and Appellant.

Casey Gwinn, City Attorney, Anita M. Noone, Assistant City Attorney, and John P. Mullen, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**KREMER, P. J.**—Plaintiff Gayle Bauer appeals a judgment denying her petition for writ of administrative mandate against defendants City of San Diego, San Diego City Council, San Diego Board of Zoning Appeals, and San Diego Developmental Services Department (together, City). ■■ ■ Bauer contends the court should have found that the City's procedure in deeming the 60-day suspension of Bauer's California Department of Alcoholic Beverage Control (ABC) license to terminate automatically Bauer's "grandfathered" existing legal nonconforming use[1] of her property as a liquor store under Business and Professions Code[2] section 23790[3] violated Bauer's due process rights to notice and the opportunity to be heard. Concluding Bauer was entitled to the opportunity to be heard on the issue of the termination of her grandfathered rights, we reverse the judgment and direct the superior court to grant a writ mandating the City to hold a new administrative hearing including adjudication of such termination issue before applying its zoning ordinance to require Bauer to obtain a conditional use permit (CUP) to resume selling alcoholic beverages at her business.

---

[1]"A legal nonconforming use is one that existed lawfully before a zoning restriction became effective and that is not in conformity with the ordinance when it continues thereafter." (*Hansen Brothers Enterprises, Inc.* v. *Board of Supervisors* (1996) 12 Cal.4th 533, 540, fn. 1 [48 Cal.Rptr.2d 778, 907 P.2d 1324].) " 'Grandfathered' businesses are nonconforming uses that are not required to seek permits under local zoning ordinances enacted after they were in business." (*City of Oakland* v. *Superior Court* (1996) 45 Cal.App.4th 740, 747, fn. 1 [53 Cal.Rptr.2d 120].)

[2]All statutory references are to the Business and Professions Code unless otherwise specified.

[3]Section 23790 provides:

"No retail license shall be issued for any premises which are located in any territory where the exercise of the rights and privileges conferred by the license is contrary to a valid zoning ordinance of any county or city. Premises which had been used in the exercise of those rights and privileges at a time prior to the effective date of the zoning ordinance may continue operation under the following conditions:

"(a) The premises retain the same type of retail liquor license within a license classification.

"(b) The licensed premises are operated continuously without substantial change in mode or character of operation.

"For purposes of this subdivision, a break in continuous operation does not include:

"(1) A closure for not more than 30 days for purposes of repair, if that repair does not change the nature of the licensed premises and does not increase the square footage of the business used for the sale of alcoholic beverages.

"(2) The closure for restoration of premises rendered totally or partially inaccessible by an act of God or a toxic accident, if the restoration does not increase the square footage of the business used for the sale of alcoholic beverages."

## I

### INTRODUCTION

For more than 40 years, Bauer and her family have operated Hilltop Liquor, an ABC-licensed retail liquor outlet. In 1995 the City enacted a zoning ordinance requiring CUP's for operation of liquor stores. However, under the zoning ordinance's "grandfather clause," Bauer was permitted to continue operating her existing liquor store as a legal nonconforming use.

In 1997 the ABC suspended Bauer's liquor license for 60 days for selling alcohol to a minor. Without affording Bauer the opportunity to be heard on the issue whether Bauer's license suspension constituted a substantial change in the mode or character of the operation of Hilltop Liquor amounting to a break in the premises' continuous operation, the City deemed such license suspension to terminate automatically Bauer's grandfathered rights to continue operating Hilltop Liquor as an existing legal nonconforming use. Based upon its theory that Bauer's grandfathered rights had automatically terminated, the City told Bauer she must obtain a CUP before resuming sales of alcoholic beverages upon reinstatement of her ABC license. Hence, consistent with the City's directives, Bauer requested a CUP from the City. However, after an administrative hearing limited to the issue of Bauer's entitlement to a CUP, the City denied Bauer's CUP request. Ultimately, the superior court entered judgment denying Bauer's petition for administrative mandate.

Concluding Bauer was entitled to an evidentiary administrative hearing, including adjudication of the issue whether the 60-day suspension of her ABC liquor license constituted a substantial change in the mode or character of Hilltop Liquor's operation amounting to a break in the continuous operation of the business so as to terminate Bauer's grandfathered rights to continue operating Hilltop Liquor as an existing legal nonconforming use, we reverse the judgment.

## II

### FACTS

Bauer operates Hilltop Liquor on property she owns at 2499 Market Street in San Diego. Sales of alcoholic beverages comprise 60 to 65 percent of Bauer's income.

Effective November 20, 1995, section 101.0515 of the San Diego Municipal Code (the 1995 Zoning Ordinance) made it unlawful for an "Alcoholic

Beverage Outlet"[4] to sell alcoholic beverages without first obtaining a CUP from the City. (*Id.* at subd. D.) However, the 1995 Zoning Ordinance permits an Alcoholic Beverage Outlet in existence on November 20, 1995, to continue to operate if the outlet "retains the same type of retail liquor license within a license classification" and "is operated continuously without substantial change in the mode or character of operation." (*Id.* at subd. P.1-2.) The 1995 Zoning Ordinance defines "substantial change in mode or character of operation" to include revocation or suspension of the outlet's ABC license "for a period of more than thirty (30) days for any reason . . . ." (*Id.* at subd. P.2.c.)

Hilltop Liquor is located in an area with an over-concentration of alcoholic beverage licenses and/or a higher than average crime rate, as defined under section 23958.4. Five liquor licenses exist in Hilltop Liquor's census tract, although section 23958.4 allows only four. Further, Hilltop Liquor is situated within 100 feet of a residential zone boundary. However, since Hilltop Liquor was in operation as an ABC-licensed outlet on November 20, 1995, Bauer continued to operate the business without a CUP as a grandfathered existing legal nonconforming use under section 23790 and subdivision P of the 1995 Zoning Ordinance.

In October 1996 a Hilltop Liquor employee sold beer to a 19-year-old police decoy. On February 4, 1997, since such October 1996 incident was not Bauer's first license violation, the ABC suspended Bauer's liquor license for 60 days until April 5, 1997. During the suspension period, Hilltop Liquor remained open and sold items other than alcoholic beverages. However, on March 26, 1997, the City notified Bauer that because the ABC had suspended her liquor license for 60 days, she was required to obtain a CUP before resuming alcohol sales.[5] Hence, on May 7, 1997, Bauer applied to the City for a CUP to resume alcohol sales at Hilltop Liquor. On May 9, 1997, noting "[t]his is a new enforcement process, and because of that, there was some delay in informing you of the requirement," the City permitted Bauer to "sell alcoholic beverages during the processing of your Conditional Use Permit application provided ABC reinstates the license." Hence, after the ABC reinstated Bauer's liquor license following the end of the suspension period, Hilltop Liquor resumed selling alcoholic beverages with the City's consent pending administrative determination of Bauer's request for a CUP.

---

[4]The 1995 Zoning Ordinance defines "Alcoholic Beverage Outlets" to include "liquor stores, grocery stores and other retail establishments that sell alcoholic beverages for off-site consumption." (*Id.* at subd. C.)

[5]Although citing subdivision P.2.c. of the 1995 Zoning Ordinance, the City's March 26, 1997, letter did not expressly indicate that based on the ABC license suspension the City had already deemed forfeited Bauer's grandfathered rights to continue operating Hilltop Liquor as an existing legal nonconforming use.

# III

## ADMINISTRATIVE PROCEEDINGS

On July 16, 1997, the City's development services department held a hearing to consider Bauer's request for a CUP to resume liquor sales at Hilltop Liquor. Since the City had already deemed the 60-day suspension of Bauer's ABC license to constitute a substantial change in the mode or character of Hilltop Liquor's operation amounting to a break in the business's continuous operation so as to terminate automatically Bauer's grandfathered rights to continue operating Hilltop Liquor as an existing legal nonconforming use, the issue whether Bauer's grandfathered rights should be terminated was not presented to the hearing officer for determination. After hearing, the hearing officer denied Bauer's request for a CUP.

On August 27, 1997, the City's board of zoning appeals (BZA) held a hearing to consider Bauer's appeal of the hearing officer's denial of her request for a CUP. The City's administrative process did not present the BZA with the option of determining whether Hilltop Liquor had operated continuously without substantial change in the mode or character of its operation.[6] After hearing, the BZA denied Bauer's appeal of the hearing officer's denial of her request for a CUP.

In September 1997 Bauer appealed to the city council the BZA's decision denying her request for a CUP. Bauer's written appeal to the city council included an argument that section 23790 prohibited the City from applying the 1995 Zoning Ordinance retroactively to affect her assertedly vested property rights in her existing business. However, on December 2, 1997, the city council declined to hear Bauer's appeal of the BZA's decision denying her request for a CUP. The City notified Bauer that the city council's action denying her request for an appeal hearing meant that the BZA's decision was "the final discretionary action" taken by the City on Bauer's request for a CUP and that Bauer had "exhausted" her "appeal opportunities with the City."

---

[6]The City acknowledges the BZA was not required to make a finding on whether Hilltop Liquor had operated continuously without substantial change in the mode or character of its operation. Indeed, the City asserts the BZA had no authority to waive the 1995 Zoning Ordinance's CUP requirement once Hilltop Liquor automatically lost its status as an existing legal nonconforming use upon suspension of Bauer's ABC license for more than 30 days.

## IV

### SUPERIOR COURT PROCEEDINGS

On December 2, 1997, Bauer filed this lawsuit for administrative mandate, declaratory relief and, alternatively, inverse condemnation.[7]

On December 22, 1997, in accord with the parties' stipulation, the superior court preliminarily enjoined the City from taking any action to prevent Bauer from using her business premises as a nonconforming existing alcoholic beverage outlet.

On June 26, 1998, Bauer's petition for writ of administrative mandate came on for hearing in the superior court. After hearing, the court denied Bauer's petition. The court found: The suspension of Bauer's liquor license for 60 days constituted a substantial change in the mode or operation of the business; the City's requirement of a CUP from Bauer was consistent with subdivision P.2.c. of the 1995 Zoning Ordinance and authorized under section 23790; there was no preemption or improper retroactive application of zoning laws when the City required a CUP; and substantial evidence supported the City's denial of Bauer's CUP application.

Bauer appeals the judgment denying her petition for a writ of administrative mandate.

## V

### DISCUSSION

■ This case presents the question whether the City was required to afford Bauer the opportunity to be heard before deeming her 60-day ABC liquor license suspension to constitute a substantial change in the mode or character of Hilltop Liquor's operation, amounting to a break in the premises' continuous operation so as to terminate automatically Bauer's grandfathered rights to resume operating her liquor sales business as an existing legal nonconforming use under section 23790 upon reinstatement of her liquor license after the suspension period. ■ As acknowledged by the City, pure questions of law are reviewed de novo by the appellate court. (*Rosenblit* v. *Superior Court* (1991) 231 Cal.App.3d 1434, 1443 [282 Cal.Rptr. 819].)

---

[7]Bauer's claims for declaratory relief and inverse condemnation were eventually dismissed and are not at issue on this appeal.

## A

### *Parties' Contentions*

██ Bauer contends the City acted improperly in effectively applying its 1995 Zoning Ordinance retroactively to terminate the existing legal nonconforming use of her property as a licensed liquor store. Specifically, Bauer contends the City's procedure in deeming the 60-day suspension of her ABC license as automatically terminating her grandfathered vested property rights to continue operating Hilltop Liquor as a licensed liquor store violated her due process rights to notice, hearing and opportunity to be heard. According to Bauer, the proper threshold issue for determination by the hearing officer and implicitly by the BZA should have been whether the City had grounds to terminate her assertedly vested property rights under its police powers to regulate nuisances or to revoke existing rights not conforming to zoning. (*Korean American Legal Advocacy Foundation* v. *City of Los Angeles* (1994) 23 Cal.App.4th 376, 391-393, fn. 5 [28 Cal.Rptr.2d 530]; cf. *Malibu Mountains Recreation, Inc.* v. *County of Los Angeles* (1998) 67 Cal.App.4th 359, 368 [79 Cal.Rptr.2d 25]; *Goat Hill Tavern* v. *City of Costa Mesa* (1992) 6 Cal.App.4th 1519, 1526-1529 [8 Cal.Rptr.2d 385].)

The City contends that upon the 60-day suspension of Bauer's ABC license, Hilltop Liquor's status as a legal nonconforming use ceased to exist, the business automatically came under the 1995 Zoning Ordinance's CUP requirement, and the business could not resume alcoholic beverage sales without obtaining a CUP from the City. The City also contends that even if the issue whether Bauer's license suspension terminated her grandfathered rights should have been adjudicated during its administrative hearing process, the judgment should nevertheless be affirmed because the administrative record assertedly contained sufficient evidence to support a determination that Bauer lost her grandfathered rights. However, because of the City's flawed process of deeming Bauer's grandfathered rights automatically terminated without first affording Bauer the opportunity to be heard on such issue, we conclude the judgment should be reversed with directions to the superior court to grant a writ mandating the City to hold a new administrative hearing including adjudication of the grandfathered rights termination issue before applying its 1995 Zoning Ordinance to require Bauer to obtain a CUP to resume selling alcoholic beverages at her business.

## B

### *Bauer Has Not Waived Appeal of the Issue Whether Her Grandfathered Rights Were Properly Deemed Terminated*

██ Preliminarily, the City contends Bauer has waived any right to challenge by this appeal the City's theory that she lost her grandfathered

rights upon suffering the 60-day suspension of her ABC license. Specifically, the City contends Bauer implicitly waived any right to raise such issue on appeal because she assertedly never raised that issue before the BZA. However, as noted, the City expressly acknowledges that its administrative procedures did not permit the BZA to determine whether Bauer's grandfathered rights had been lost. As also noted, the City asserts the BZA lacked authority to waive the 1995 Zoning Ordinance's CUP requirement once Hilltop Liquor automatically lost its status as a legal nonconforming use upon the 60-day suspension of its ABC license. Hence, in light of the City's administrative process, it would have been futile for Bauer to raise before the BZA the issue whether her grandfathered rights had been terminated. Further, the record indicates that in seeking relief at the highest administrative level, to wit, the city council, Bauer specifically argued that section 23790 prohibited the City from applying its 1995 Zoning Ordinance retroactively to affect her assertedly vested property rights in her existing business but the city council declined to hear Bauer's appeal.

The City also contends that in the superior court Bauer waived both explicitly and implicitly any challenge to the loss of Hilltop Liquor's status as an existing legal nonconforming use. Specifically, the City notes that in replying to its opposition to her mandate petition in the superior court, Bauer submitted a memorandum stating that in seeking the writ she was "not asserting that the City lacks authority to require that she obtain a conditional use permit, or that it lacks authority to impose reasonable conditions upon the operation of her business." However, although the City characterizes such statement as an admission by Bauer that Hilltop Liquor's status as an existing legal nonconforming use had properly been deemed lost because of the 60-day ABC license suspension, the record indicates Bauer made such statement only in reply to a statute of limitations argument not addressed by the City in responding to this appeal. Further, when read in context, such statement simply reflects Bauer's recognition that the City may have the authority to regulate reasonably, but not terminate, an existing land use, and did not amount to a waiver of the issue whether Hilltop Liquor's status as an existing legal nonconforming use was terminated improperly by the City's retroactive application of the 1995 Zoning Ordinance. Moreover, at the superior court hearing, the City's counsel stated, "the threshold issue in this entire case, from the City's perspective, is whether or not petitioners had a legal nonconforming right after the 60-day suspension." Finally, as the City acknowledges, Bauer's brief in support of her petition for writ of mandate in the superior court expressly raised the issue whether the City retroactively applied the 1995 Zoning Ordinance's CUP requirement in violation of section 23790.

In sum, on this record Bauer has not waived her right to challenge by this appeal the City's theory that Bauer automatically lost her grandfathered rights upon suffering the 60-day suspension of her ABC license.[8]

## C

### *Bauer Was Entitled to the Opportunity to Be Heard Before the City Determined Her Grandfathered Rights Were Terminated*

#### 1

##### *The Law*

###### (a)

###### *Grandfathered Rights of Existing Liquor Licensees*

■    Generally, governmental entities do not apply newly enacted zoning ordinances to close businesses lawfully operating at the time those ordinances became effective. (*Hansen Brothers Enterprises, Inc.* v. *Board of Supervisors, supra,* 12 Cal.4th at p. 552;[9] see also *Livingston Rock etc. Co.* v. *County of L.A.* (1954) 43 Cal.2d 121, 127 [272 P.2d 4]; *Wilkins* v. *City of San Bernardino* (1946) 29 Cal.2d 332, 340 [175 P.2d 542].[10]) ■    Consistent with that general rule, section 23790 recognizes the grandfathered rights of liquor licensees operating legally on the effective date of a new zoning ordinance. (*City of Oakland* v. *Superior Court, supra,* 45 Cal.App.4th at p. 752; *Suzuki* v. *City of Los Angeles* (1996) 44 Cal.App.4th 263, 275, fn. 4 [51

---

[8]We note that Bauer may have been better served by filing in the first instance a petition for writ of traditional mandamus challenging the City's determination by ipse dixit fiat that Bauer's grandfathered rights terminated automatically upon suspension of her ABC license so as to subject Bauer to the 1995 Zoning Ordinance's requirement that she obtain a CUP before resuming sales of alcoholic beverages upon reinstatement of her license. However, we cannot fault Bauer for proceeding instead under the administrative process, albeit limited and flawed, provided by the City.

[9]In *Hansen Brothers Enterprises, Inc.* v. *Board of Supervisors, supra,* 12 Cal.4th 533, the Supreme Court observed: "Zoning ordinances and other land-use regulations customarily exempt existing uses to avoid questions as to the constitutionality of their application to those uses. 'The rights of users of property as those rights existed at the time of the adoption of a zoning ordinance are well recognized and have always been protected.' [Citation.] [¶] Accordingly, a provision which exempts existing nonconforming uses 'is ordinarily included in zoning ordinances because of the hardship and doubtful constitutionality of compelling the immediate discontinuance of nonconforming uses.' " (*Id.* at p. 552.)

[10]In *Wilkins* v. *City of San Bernardino, supra,* 29 Cal.2d 332, the Supreme Court noted: "An examination of the California decisions discloses that the cases in which zoning ordinances have been held invalid and unreasonable as applied to particular property fall roughly into four categories: 1. Where the zoning ordinance attempts to exclude and prohibit existing and established uses or businesses that are not nuisances. . . ." (*Id.* at p. 340.)

Cal.Rptr.2d 880].)[11] The Legislature intended that section 23790 "protect the vested rights of the proprietors of premises engaged in the lawful, licensed sale of alcoholic beverages. Such a business has acquired by the passage of time a vested right to continue in operation to lawfully dispense alcoholic beverages." (*City of Oakland* v. *Superior Court, supra,* at p. 756.) Further, "review of the legislative history of the 1982 and 1989 amendments to section 23790 indicates a legislative intent to protect vested interests of licensees otherwise lawfully engaged in a business subsequently made a nonconforming use by a commercial zoning ordinance." (*Suzuki* v. *City of Los Angeles, supra,* at pp. 277-278.)[12]

In essence, section 23790 prohibits the ABC from issuing any liquor licenses whose exercise would be contrary to a local zoning ordinance, except in cases of existing legal nonconforming uses with grandfathered rights. (*City of Oakland* v. *Superior Court, supra,* 45 Cal.App.4th at p. 752.) The statute also "specifies the conditions under which a licensee may retain his or her 'grandfathered' status as a 'deemed approved,' but nonconforming use for the particular geographic area." (*Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* 23 Cal.App.4th at p. 397.) The "plain language" of section 23790 "exempts existing nonconforming uses from compliance with later enacted zoning ordinances . . . when the business has continuously operated without substantial change in either mode or character of operation." (*Suzuki* v. *City of Los Angeles, supra,* 44 Cal.App.4th at p. 277.)

Generally, the determination whether an existing legal nonconforming use should continue to be allowed under grandfathered provisions involves mixed questions of law and fact. (Cf. *Hansen Brothers Enterprises, Inc.* v. *Board of Supervisors, supra,* 12 Cal.4th at p. 552.) "When continuance of an existing use is permitted by a zoning ordinance, the continued nonconforming use must be similar to the use existing at the time the zoning

---

[11]In *City of Oakland* v. *Superior Court, supra,* 45 Cal.App.4th 740, the appellate court stated that section 23790 "prohibits the issuance of alcoholic beverage retail licenses for any premises located in a zone where the exercise of the rights conferred by that license would violate a valid local zoning ordinance, unless the premises had been used in the exercise of such rights before the effective date of the ordinance." (45 Cal.App.4th at p. 753.)

Similarly, in *Suzuki* v. *City of Los Angeles, supra,* 44 Cal.App.4th 263, the appellate court observed the statute permits "existing nonconforming uses to continue in operation despite subsequently enacted zoning ordinances, provided the use and character of the business remain the same as before passage of a zoning ordinance." (*Id.* at p. 275, fn. 4.)

[12]Before its 1982 amendment, section 23790 provided: "No retail license shall be issued for any premises which are located in any territory where the exercise of the rights and privileges conferred by the license is contrary to a valid zoning ordinance of any county or city unless the premises had been used in the exercise of such rights and privileges at a time prior to the effective date of the zoning ordinance." (Stats. 1953, ch. 152, § 1, p. 97.)

ordinance became effective." (*Ibid.*) " '[I]n determining whether the noncon-forming use was the same before and after the passage of the zoning ordinance, each case must stand on its own facts.' " (*Ibid.*)[13]

(b)

### Procedural Rights of Grandfathered Liquor Licensees

■ "Once a licensee has acquired a conditional use permit, or has 'deemed approved' [(i.e., grandfathered)] status, a municipality's power to revoke the conditional use is limited. [Citation.] If the permittee has incurred substantial expense and acted in reliance on the permit, the permittee has acquired a vested property right in the permit and is entitled to the protec-tions of due process before the permit may be revoked. [Citation.] 'In determining that a permit, validly issued, should be revoked, the governing body of a municipality acts in a quasi-judicial capacity. In revoking a permit lawfully granted, due process requires that it act only upon notice to the permittee, upon a hearing, and upon evidence substantially supporting a finding of revocation.' " (*Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* 23 Cal.App.4th at pp. 391-392, fn. 5.) Further, " '[w]hen a permittee has acquired such a vested right it may be revoked if the permittee fails to comply with reasonable terms or conditions expressed in the permit granted [citations] or if there is a compelling public necessity. [Citations.]' [Citation.] A compelling public necessity warranting the revo-cation of a use permit for a lawful business may exist if the conduct of a business as a matter of fact constitutes a nuisance and the permittee refuses to comply with reasonable conditions to abate the nuisance. In these circum-stances a municipality has the authority to remove such a business under its police power to prohibit and enjoin nuisances. [Citation.] However, in order to justify the interference with the constitutional right to carry on a lawful business it must be clear the public interests require such interference and that the means employed are reasonably necessary to accomplish the purpose and are not unduly oppressive on individuals." (*Id.* at p. 392, fn. 5.) Moreover, ". . . it is clear revocation of a use permit could have the effect

[13]Although the circumstances permitting an existing business operating as a legal noncon-forming use to retain grandfathered status are construed narrowly (*Hansen Brothers Enter-prises, Inc.* v. *Board of Supervisors, supra,* 12 Cal.4th at p. 568; *City of Oakland* v. *Superior Court, supra,* 45 Cal.App.4th at p. 757; *Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* 23 Cal.App.4th at p. 397; *City of Los Angeles* v. *Gage* (1954) 127 Cal.App.2d 442, 459 [274 P.2d 34]), the Supreme Court has nevertheless observed that in "construing an ordinance which limits continuation of nonconforming uses, however, the court must also assume that the county did not intend an arbitrary or irrational application of its provisions." (*Hansen Brothers Enterprises, Inc.* v. *Board of Supervisors, supra,* at pp. 568-569.)

of putting the licensee completely out of business. It is consequently a very harsh remedy which requires the strictest adherence to principles of due process. Whenever alternate remedies can achieve the same goal, such as the imposition of additional conditions or controls, these avenues ought to be pursued if feasible." (*Id.* at pp. 392-393, fn. 5.)

In *Goat Hill Tavern* v. *City of Costa Mesa, supra,* 6 Cal.App.4th 1519, the appellate court concluded the rights affected by Costa Mesa's refusal to renew Goat Hill Tavern's CUP were "sufficiently vested and important to preclude their extinction by a nonjudicial body." (*Id.* at p. 1527.) The appellate court observed: " 'When an administrative decision affects a right which has been *legitimately acquired* or is otherwise vested, and when that right is of a fundamental nature from the standpoint of its economic aspect or its effect . . . in human terms and the importance . . . to the individual in the life situation, then a full and independent *judicial* review of that decision is indicated because [t]he abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction.' [Citation.] [¶] 'Whether an administrative decision substantially affects a fundamental vested right must be decided on a case-by-case basis. . . . In deciding whether a right is "fundamental" and "vested," the issue in each case is whether the " 'affected right is deemed to be of sufficient significance to preclude its extinction or abridgment by a body lacking *judicial* power.' " ' " (*Id.* at p. 1526, italics in original.) The appellate court also observed: "Interference with the right to continue an established business is far more serious than the interference a property owner experiences when denied a conditional use permit in the first instance. Certainly, this right is sufficiently personal, vested and important to preclude its extinction by a nonjudicial body." (*Id.* at p. 1529.)[14] Similarly, in *Malibu Mountains Recreation, Inc.* v. *County of Los Angeles, supra,* 67 Cal.App.4th 359, the appellate court concluded that ". . . the grant of a CUP with subsequent reliance by the permittee creates a fundamental vested right that subjects a revocation to judicial review under the independent judgment test." (*Id.* at p. 368.)

---

[14]In *Goat Hill Tavern* v. *City of Costa Mesa, supra,* 6 Cal.App.4th 1519, noting the "avowed purpose and result of the city's decision [was] to shut down Goat Hill Tavern" (*id.* at p. 1528), the appellate court stated: "Goat Hill Tavern has been in operation for over 35 years as a legal nonconforming use. [Owner] Ziemer invested over $1.75 million in its refurbishment, including substantial exterior facade improvements undertaken at the city's behest. He then sought a conditional use permit to allow the addition of a game room, which was granted on a temporary basis. Now, with the expiration of the permit, the city urges he has lost all right to continue in business. [¶] We cannot conclude on these unique facts that Ziemer's right to continued operation of his business is not a fundamental vested right. This is not, as the city so strongly urges, a 'purely economic privilege.' It is the right to continue operating an established business in which he has made a substantial investment." (*Id.* at p. 1529, fn. omitted.)

## 2

### *Analysis*

██  Although contemplating that the ABC may properly decline to issue a liquor license upon determining that the licensee's grandfathered rights have been lost, section 23790 does not define its terms "operated continuously without substantial change in mode or character of operation" or "break in continuous operation." Further, the statute does not establish any procedure for determining that grandfathered rights have been terminated. As noted by the appellate court in *Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* 23 Cal.App.4th 376, ". . . section 23790 does not address the issue of the retention of a liquor license once issued." (*Id.* at p. 397.)

Here, Bauer's ABC license was reinstated after completion of the 60-day suspension period. However, relying on its 1995 Zoning Ordinance and without affording Bauer the opportunity to be heard, the City simply deemed that "a substantial change in mode or character of operation" of Hilltop Liquor occurred automatically upon suspension of Bauer's ABC license for more than 30 days so that Bauer lost all grandfathered rights to continue operating her existing business as a legal nonconforming use under section 23790.[15] As discussed, the City could not properly deem Bauer's grandfathered rights automatically terminated without providing Bauer with an opportunity to be heard. (*Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* 23 Cal.App.4th at pp. 391-393, fn. 5; cf. *Malibu Mountains Recreation, Inc.* v. *County of Los Angeles, supra,* 67 Cal.App.4th at p. 368; *Goat Hill Tavern* v. *City of Costa Mesa, supra,* 6 Cal.App.4th at pp. 1526-1529.) Hence, before applying its 1995 Zoning Ordinance to require Bauer to obtain a CUP to resume selling alcoholic beverages at Hilltop Liquor, Bauer was entitled to an administrative hearing including an adjudication of the issue of the termination of her grandfathered rights.

As noted, the City has acknowledged that its administrative procedures did not require its administrative hearing bodies to make findings on the issue whether Hilltop Liquor had operated continuously without substantial change in the mode or character of its operation. The City has also maintained that its administrative bodies lacked authority to waive the 1995

---

[15]We note the City's attempt by means of its 1995 Zoning Ordinance's subdivision P.2.c. to define the language of section 23790 is not controlling on the matter of the proper interpretation of such statute. (Cf. *Boccato* v. *City of Hermosa Beach* (1994) 29 Cal.App.4th 1797, 1807 [35 Cal.Rptr.2d 282].) Instead, construction of section 23790 is a matter of law for the court. (*City of Oakland* v. *Superior Court, supra,* 45 Cal.App.4th at p. 753; *Rosenblit* v. *Superior Court, supra,* 231 Cal.App.3d at p. 1443.)

Zoning Ordinance's CUP requirement once Hilltop Liquor assertedly lost its status as an existing legal nonconforming use automatically upon suspension of Bauer's business's ABC license for more than 30 days. Nevertheless, the City contends that even if the issue whether Bauer had lost her grandfathered rights should have been adjudicated during its administrative hearing process, the judgment should nonetheless be affirmed because the administrative record assertedly contained sufficient evidence to support a finding that the 60-day suspension of Bauer's liquor license constituted a break in continuous operations terminating her grandfathered rights. However, on this record the City's contention must be rejected. Although the superior court effectively found that suspension of Bauer's ABC license terminated Bauer's grandfathered rights under section 23790 and the 1995 Zoning Ordinance, such finding was based solely on the evidentiary record of administrative proceedings that were limited to the issue whether Bauer's business should receive a CUP and in which termination of her grandfathered rights was not at issue or otherwise adjudicated but instead taken as a given by the administrative hearing bodies. Thus, since Bauer did not receive a full evidentiary hearing on the issue of termination of her grandfathered rights either at the administrative level or in the superior court's later review of the limited administrative record, the judgment must be reversed.[16]

D

*Conclusion*

A writ of administrative mandate may properly issue where a municipality has prejudicially abused its discretion by not proceeding in the manner

---

[16]At oral argument the City made much of the fact that a Los Angeles zoning ordinance mentioned in *Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* 23 Cal.App.4th 376, provided that an establishment selling alcoholic beverages for off-site consumption would lose its "deemed approved" status simply upon suspension of its liquor license. (*Id.* at p. 398, fn. 6.) However, in that case the appellate court merely noted such ordinance without comment on its validity or application. (*Ibid.*) Moreover, in concluding in that case that the plaintiffs' businesses did not come within the safe haven clause of section 23790, subdivision (b)(1), the appellate court observed: "As plaintiffs' businesses have been closed since 1992 they are not in continuous operation and by definition have undergone a substantial change in the mode or character of operation." (*Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* at p. 398.) In the same vein, in *Boccato* v. *City of Hermosa Beach, supra,* 29 Cal.App.4th 1797, the appellate court observed that the court in *Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* "ruled only" that section 23790 "did not apply because the businesses in question had not been in operation continuously, as defined in the statute. [Citation.] By implication, therefore, the court agreed with the argument advanced by appellants in that case, and advanced here, that section 23790 does preempt local zoning ordinances at least insofar as such ordinances purport to regulate previously existing businesses." (*Boccato* v. *City of Hermosa Beach, supra,* at p. 1807; see also *Suzuki* v. *City of Los Angeles, supra,* 44 Cal.App.4th at p. 272.)

required by law. (Code Civ. Proc., § 1094.5, subd. (b).) In light of the City's failure to proceed in the manner required by law, the superior court should have granted mandate directing the City to hold a new administrative hearing including adjudication of the issue of the termination of Bauer's grandfathered rights before applying its 1995 Zoning Ordinance to require Bauer to obtain a CUP to resume selling alcoholic beverages at her business.[17]

## VI

### DISPOSITION

The judgment is reversed. The superior court is directed to grant a writ mandating Respondents to hold a new administrative hearing including adjudication of the issue of termination of Appellant's grandfathered rights before applying its 1995 Zoning Ordinance to require Appellant to obtain a CUP to resume selling alcoholic beverages at her business. Appellant shall have costs on appeal.

McIntyre, J., and Amos, J.,* concurred.

---

[17]In *Hansen Brothers Enterprises, Inc.* v. *Board of Supervisors, supra,* 12 Cal.4th 533, noting the county was not without remedies if the nonconforming mining use increased to a level the county believed excessive, the Supreme Court stated: "As with any other nonconforming use, the county may seek an injunction or other penalties authorized by the zoning ordinance, whenever it believes that production at the mine has reached a level that constitutes an impermissible intensification of the nonconforming use for which [plaintiff] has a vested right." (*Id.* at p. 575.) Similarly, if the City believes Bauer's existing legal nonconforming use should be terminated, it has other available remedies including asking the ABC to revoke Bauer's license, acting under its nuisance abatement powers, or imposing conditions or seeking injunctive relief under its zoning/land use powers. (See, e.g., *Livingston Rock etc. Co.* v. *County of L.A., supra,* 43 Cal.2d at p. 128; *City of Oakland* v. *Superior Court, supra,* 45 Cal.App.4th at pp. 747, 756-757; *Suzuki* v. *City of Los Angeles, supra,* 44 Cal.App.4th at pp. 273-277, 280; *Korean American Legal Advocacy Foundation* v. *City of Los Angeles, supra,* 23 Cal.App.4th at pp. 391-393 & fn. 5.)

*Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.